JOHN R. LAZENBY, trustee in bankruptcy, *vs.* FRANKLIN
C. HENDERSON & others.

Suffolk.   November 10, 14, 1921. — March 22, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, & JENNEY, JJ.

*Corporation,* Officers and agents.  *Fraud.  Equity Jurisdiction,* Accounting by
director as to transactions in violation of his fiduciary relation to corporation.
*Damages.  Equity Pleading and Practice,* Master, Appeal.

The directors of a Massachusetts manufacturing corporation, whose by-laws re-
quired that directors should be stockholders and vested authority to increase
the number of directors beyond five in the stockholders, voted to increase their
number from five to seven and then elected as a sixth director one who was not
a stockholder, but who, in another corporation which was a stockholder, occu-
pied the principal offices and owned practically all of the shares of its capital
stock.  He did not know of the requirements of the by-laws, and, knowing of
his election and believing himself to be a director, neither declined nor resigned
the office.  The corporation with his knowledge advertised him as a director
by placing his name on the list of directors on its letter head.  *Held,* that the
person so elected, while not a director *de jure,* in the circumstances was a di-
rector *de facto* and third persons had a right to assume that there was no defect
in his election and to hold him subject to the fiduciary obligations of a director.
The *de facto* director above described was in a dominant position in the corporation
because it was in financial straits, of which he had knowledge, and, dealing with
two only of the directors and without the knowledge of the other three, he made
purchases of articles manufactured by the corporation at prices which were
wholly inadequate and which he knew to be such, and in so doing he acted
not for himself personally but for the second corporation of which he was the
principal officer and practically all of whose capital stock he owned.  The
goods then were sold at a profit.  *Held,* that

(1) The fact, that the *de facto* director did not act for himself personally but
for the second corporation, did not relieve him of his fiduciary obligation as
director of the first corporation;

(2) The purchases made by the *de facto* director were in violation of his
fiduciary obligation as such director, and he was accountable for the profits
realized from the resales;

(3) Such accountability of the *de facto* director existed although no corrup-
tion nor dishonesty on his part was shown;

(4) The second corporation also was accountable because in making the
purchases it was chargeable with the knowledge of its representative.

In a suit in equity to enforce the accountability of the *de facto* director and the
second corporation in the circumstances above described, a master found that
three hundred and seven pianos had been purchased between January 29,
1915, and November 20, 1915; that, owing to the defendant's method of making

sales and keeping records and to the destruction by fire of some of their records after the suit was begun, the precise price for which the individual pianos were sold could not be ascertained; that the second corporation easily could have kept its books in such a way that its profits from the resales could have been determined; that the pianos of the style of one hundred and forty-five of the number purchased, for each of which $91 was paid, were sold at retail by the second corporation in September, 1915, for $229.75 each, and that the difference between the purchase price paid by the second corporation for the remaining one hundred and sixty-two pianos and a fair wholesale price for them was $4,295.29. A final decree was entered directing the defendants to pay to the plaintiff $24,400. The defendants appealed. Held, that

(1) So far as the decree involved findings of fact by the justice who ordered. it, it should not be set aside unless it plainly was wrong;

(2) In view of the relation between the parties, and the practical impossibility of determining the actual profits because of the failure of the defendants to keep accounts from which such profits could be ascertained accurately, it could not be said that the justice ordering the decree was wrong in the result he reached.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 19, 1916, by the trustee in bankruptcy of Trowbridge Piano Company against Franklin C. Henderson, Franklin C. Henderson Company, Melbourn A. Marks and Frederick M. Kilmer, for an accounting by the first two defendants as to profits realized by them from sales of pianos purchased at unwarrantably low prices from the Trowbridge Piano Company, of which the defendant Henderson was alleged to have been elected a director, between January 29, 1915, and November 20, 1915, when that corporation made an assignment for the benefit of its creditors.

The suit was referred to a master. Material facts found by the master are described in the opinion. Exceptions by the plaintiff and by the defendants Henderson and Franklin C. Henderson Company were heard by *Carroll,* J., by whose order an interlocutory decree was entered overruling the exceptions and confirming the report. The suit then was heard on the question of final decree by *Crosby,* J., by whose order a final decree was entered directing the defendants Henderson and Franklin C. Henderson Company to pay to the plaintiff $24,400.04 with interest from November 19, 1915, and costs. Those defendants appealed.

*G. A. Ham,* (*W. A. Buie* with him,) for the defendants Henderson and Franklin C. Henderson Company.

*W. P. Everts,* for the plaintiff.

DE COURCY, J. The plaintiff is trustee in bankruptcy of the Trowbridge Piano Company, a Massachusetts manufacturing corporation. He seeks to recover, for the benefit of creditors, profits received by the defendants F. C. Henderson and F. C. Henderson Company (hereinafter referred to as the defendants) from the resale of pianos which the Henderson company bought from the Trowbridge company while Henderson was a director of the latter company. The case is here on the appeal of the defendants from a final decree in favor of the plaintiff.

The defendant Franklin C. Henderson Company is a jobber and distributor of pianos, sewing machines and other articles. During all the period in question the defendant F. C. Henderson was the president and treasurer of that company, and owned practically all of its capital stock. The Trowbridge Piano Company was organized in the spring of 1913. The two largest stockholders were the defendants Marks, who was president, superintendent and salesman, and Kilmer, who was treasurer. In June, 1913, this corporation bought a piano factory at Franklin, Massachusetts, with its machinery, patents and other property, and the good will of the business theretofore carried on by an earlier Trowbridge company. When Marks began negotiations for the purchase, he tried to induce Henderson to finance the new company, but without success. However, after Henderson had looked over the plant, it was agreed that the new company about to be formed should complete the manufacture of fifty-five pianos remaining on hand, in various stages of manufacture, and should sell them to the Henderson company for $5,000. This sum was advanced, and with the money raised by the sale of stocks and bonds, it was used in buying the property, and organizing and starting the business. Other orders were given from time to time, at prices satisfactory to Henderson. We are concerned only with the purchase by the Henderson company of three hundred and seven pianos between January 29, 1915, when it is claimed that Henderson became a director of the Trowbridge company, and November 20, 1915, when the latter company made an assignment for the benefit of creditors.

As early as December, 1913, Henderson wrote to the Trowbridge company suggesting that he become financially interested in that company. On May 2, 1914, the board of directors voted to in-

crease the number of members from five to seven; and acting under this vote Henderson was elected a director January 25, 1915. It may be assumed that he did not become a director *de jure*, because he was not a stockholder, as required by the by-laws; and further, the authority to increase the number of directors from five to seven was vested in the stockholders, and not in the board of directors. But on the findings of the master, he was a director *de facto*. The above provisions of the by-laws were unknown to him. His company owned fifteen shares of the preferred and fifteen of the common stock of the Trowbridge company. "He knew of his election as a director, and never declined it or resigned. He believed he was a director." And he knew that the company advertised the fact by placing his name in the list of directors on the letter head of the Trowbridge Piano Company. Accordingly third persons had a right to assume that there was no defect in his election, and to hold him subject to the fiduciary obligations of a director. *Thayer* v. *New England Lithographic Steam Printing Co.* 108 Mass. 523. *United Zinc Co.* v. *Harwood*, 216 Mass. 474. *Stratton Massachusetts Gold Mines Co.* v. *Davis*, 222 Mass. 549, 553. *O'Brien* v. *O'Brien*, 238 Mass. 403.

The fact that Henderson bought the pianos, not for himself personally but for the Henderson company which he owned and controlled, does not relieve him from his fiduciary obligation as director of the Trowbridge company. His personal interest as buyer conflicted with that of the selling corporation, which he was bound as director to protect. As was said in *Geddes* v. *Anaconda Copper Mining Co.* 254 U. S. 590, 599: "The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character." This rule is applicable even though no corruption or dishonesty is shown on the part of Henderson. In fact he had purchased, the record shows, pianos from the Trowbridge company at the same inadequate price before he became a director. But when he assumed

that position, the law imposed upon him a standard of duty similar to that required of trustees. He saw fit thereafter to buy pianos at prices which he knew to be inadequate. He dealt with Marks and Kilmer, while the other three directors were kept in ignorance of the terms of the contracts. He was in a dominant position by reason of the financial straits of the Trowbridge company, of which he had knowledge. He continued to buy pianos at prices which he fully knew were only ten or eleven per cent above the cost of material and labor. As the master finds: "Marks and Kilmer showed Henderson . . . a memorandum of actual costs of manufacturing as determined by them, including some allowance for factory overhead expenses. . . . This ten or eleven per cent was intended to cover wages of foreman, engineer, and watchman at the factory, the cost of coal, water, insurance, taxes, interest, drayage, and Marks' daily carfares from Boston to the factory and return. The price did not cover the salaries of Marks or Kilmer or any executive expenses, expenses of the Boston office, of the Boston salesrooms, or selling expenses. It was estimated simply to cover factory expenses and factory overhead and possibly a small margin." On the facts found by the master, Henderson and his corporation were rightly held accountable for the profits made in the transaction; Henderson because he was subject to the obligations of an implied trust in favor of the Trowbridge Piano Company, and the F. C. Henderson Company because in purchasing the pianos it was chargeable with the knowledge of its representative. *Parker* v. *Nickerson,* 112 Mass. 195. *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 476. *Malden & Melrose Gas Light Co.* v. *Chandler,* 220 Mass. 1, 8. *Elliott* v. *Baker,* 194 Mass. 518.

The final decree entered by order of the single justice directed the defendants Franklin C. Henderson and F. C. Henderson Company to pay to the plaintiff the sum of $24,400.04 with interest. So far as that decree involves findings of fact, it will not be set aside unless plainly wrong. *Francis* v. *Daley,* 150 Mass. 381, 383. Between the date of Henderson' selection as a director and the assignment for the benefit of creditors, the total number of pianos sold by the Trowbridge company to the Henderson company was three hundred and seven. Of this number one hundred and forty-five were style 4 (Florence) pianos, for which the Henderson

company paid about $91 each, — or a total of $13,209. The difficulty in determining the actual profit realized on the resale of these and the other pianos, arises from these facts: As Mr. Henderson testified, over ninety-six per cent of its pianos were sold at retail through department stores; and by reason of the method of doing business, as explained by him, it was impossible to state what price they received for any individual piano. No accountant could figure out from any of the books the net amount received for any piano so sold, and hence the net profit. The only detailed record kept by the defendants of sales at wholesale to dealers was kept on sales slips; and the records of sales in 1915 were destroyed about January 1, 1919, which was after this suit was brought. The master found that "Henderson Company could easily have kept its books in such a way that its profits from the sale of the Trowbridge Company pianos could be determined." It would be inequitable to permit the defendants to escape liability because of the difficulty of determining the exact profits, in view of these facts. It did appear, however, that said style 4 (Florence) piano was sold by the Henderson company for $229.75 retail in September, 1915; and the master finds that this was a fair retail price for it at the time. No evidence was offered to controvert this, nor did the defendants offer any evidence to show the cost of selling. Apparently the single justice held the defendants liable for this price on the resale of the one hundred and forty-five Florence pianos; or $20,104.75 more than they paid for them to the Trowbridge company. As to the remaining one hundred and sixty-two pianos, the court apparently allowed the plaintiff the difference between what the Henderson company paid therefor and the fair wholesale price for them, namely $4,295.29. In view of the relation between the parties, and the practical impossibility of determining the actual profits because of the failure of the defendants to keep accounts from which such profits could be accurately ascertained, we cannot say that the single justice was plainly wrong in the result reached by him. See *Little* v. *Phipps*, 208 Mass. 331, 335; *Kelly* v. *Allin*, 212 Mass. 327.

The parties have treated the defendants Trowbridge Piano Company, Marks and Kilmer as nominal rather than real defendants, and no decree was entered for or against them. As against these the bill may be dismissed without prejudice and

without costs. The decree against the defendants Franklin C. Henderson and F. C. Henderson Company is to be affirmed, with costs.

*Ordered accordingly.*