MANTON-GAULIN MANUFACTURING COMPANY, INCORPO-
RATED, *vs.* JOHN M. COLONY.

Suffolk.    November 20, 1925. — March 1, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Invention. Patent. Agency,* Fidelity of agent. *Equity Jurisdiction,* To
require conveyance to employer of rights in invention by employee.

Upon the evidence at the hearing of a suit in equity by a corporation
to compel a former employee to assign to it all his right, title and
interest in an application for a patent upon an invention which was
perfected by him while acting as foreman or superintendent of a
manufacturing branch of the business of the plaintiff, it was *held,* that
(1) Findings were warranted that, while the defendant's idea, con-
ceived by him, was developed in consultation with the principal officer
of the plaintiff and both anticipated that much advantage and profit
would result to the plaintiff, and whatever expense was incurred in
reducing the theory to practice was borne by the plaintiff, the de-
fendant, while in the plaintiff's employ, "acquired no information as to
manufacturing processes of a secret or confidential nature, nor, when
leaving the plaintiff's service, carried away any knowledge or informa-
tion which he either did not possess when he entered its employ or
which he did not acquire in the ordinary course of his employment as a
result of his own study and observation"; and that "the defendant was
not expressly employed to develop or improve any particular process
or machine; no original suggestion or request ever emanated from his
employer looking toward such development or improvement, and the
defendant never agreed to assign to the plaintiff any patent which he
might procure;"
(2) A decree dismissing the bill was proper. Following *American
Circular Loom Co.* v. *Wilson,* 198 Mass. 182.

BILL IN EQUITY, filed in the Superior Court on January 10,
1925, to require the defendant to assign to the plaintiff all
his rights in a certain application for a patent described in
the opinion.

In the Superior Court, the suit was heard by *McLaugh-
lin,* J., a stenographer having been appointed under G. L.
c. 221, § 85, Equity Rule 35 (1905). Material evidence and
findings by the judge are described in the opinion. By
order of the judge a final decree was entered dismissing the
bill. The plaintiff appealed.

*F. P. Fish,* (*J. L. Stackpole* with him,) for the plaintiff.

*J. A. Locke & G. P. Dike,* for the defendant.

PIERCE, J.   This is a bill in equity by which the plaintiff corporation seeks to compel the defendant to assign to the plaintiff all right, title and interest in and to an application for United States Letters Patent, Serial No. 652,425, and in and to any divisional application thereof which may have been or may hereafter be filed, and in and to any patent or patents that may be issued thereon, said invention having been made by the defendant while in the employ of the plaintiff.

As stated in the opening by the plaintiff's attorney, the subject matter of the controversy is as follows: The plaintiff is a corporation which has been for many years in the manufacture of what are called homogenizing machines, under a certain patent to one Gaulin, numbered 756,953.   A homogenizing machine is a machine in which liquid is forced through a valve, very much like a safety valve, by means of pumps, and the forcing of this liquid, which contains fatty globules, through the narrow valve, under pressure, has the effect of breaking up the fat globules in the liquid and breaking them up so small that the fat globules will not rise in the liquid.   The machines are largely used in the industries which relate to milk and cream, and particularly in the ice cream business.   The essence of the machine is that the liquid is always under fairly high pressure, anywhere from fifteen hundred pounds to three thousand pounds per square inch, and forced through the safety valve, against the pressure of the valve.   Before this controversy arose (before the invention was made by the defendant) the plaintiff was engaged in the manufacture and sale of machines which had a single valve through which the liquid was forced, and the effect of that single valve was not only to break up the fat globules, but to thicken the liquid.   It made it thick, and that was good for some purposes, and not so good for others.   The invention which is the bone of contention in this case is that of having two valves in succession.   They are just the same in structure; in fact, two spring pressed or safety valves in succession, so that the

liquid is first forced through one valve and then the pipe continues and the liquid is forced through the other valve, and curiously enough the effect of that is to break up the fat globules as before but it produces a thin liquid, as distinct from a viscous liquid.

The attorney then stated the theory upon which the plaintiff predicated its right, as follows: "Our point is that the defendant, Mr. Colony, who was employed by the plaintiff, had such a relation to the plaintiff, such a fiduciary relation, that when he made this invention and developed it at the plaintiff's expense, in the plaintiff's shop, and applied for the patent, he was therefore under obligation, under recognized authorities, to transfer that patent — the title to that patent — to the plaintiff. That is our case."

A commissioner took the evidence and the case was heard by a judge of the Superior Court. He made findings and an order for decree on May 1, 1925, and pursuant to said order a final decree was entered May 6, 1925, dismissing the bill with costs in favor of the defendant; and the plaintiff appealed to this court from the final decree, on May 12, 1925.

A careful reading of the reported evidence in the light of the contention of the plaintiff that the judge of the Superior Court "made no mention and apparently entirely overlooked some of the most salient and vital facts of record," brings us to the conclusion that the reported findings are supported in every essential particular by the evidence and that in no sense can such findings be said to be clearly wrong. *Dickinson* v. *Todd,* 172 Mass. 183. *Skehill* v. *Abbott,* 184 Mass. 145. *Campbell* v. *Cook,* 193 Mass. 251, 256.

The pertinent facts thus found are that the defendant, in 1914, was employed as a machinist by one John W. Davies, the president and practically the sole stockholder of the plaintiff corporation, and of its predecessor in business, a Maine corporation of substantially the same name. Between 1914 and 1924, when the relation between the plaintiff and defendant was determined for a cause not found, the defendant acted as foreman or superintendent of the manufacturing part of the business. There was never any express agreement, either written or oral, defining the defendant's

duties, but, as the judge finds, "it may fairly be inferred from all the facts and circumstances in the case that his main duty was to manage and supervise the construction of machines under the original Gaulin patent and under any new patents under which the company operated while he was in their employ; in general, it was to superintend the plaintiff's business so far as production was concerned." The defendant in no way had control of the business. He could not borrow money, sign notes, nor make contracts. He had a power of attorney to sign checks in payment of "the necessary bills of the office." All the finances for the business were obtained by the president of the plaintiff who signed all contracts with jobbers, was the chief stockholder and in control of its affairs. The defendant's use of the title "general manager" during the sickness of Davies was unauthorized and adopted at the suggestion of a bookkeeper.

The invention in question, conceived in 1923, was of large importance because the Gaulin patent had expired in 1921. When the defendant conceived the idea of the two-stage valve machine, he consulted from time to time with Davies concerning it, and discussed with him its advantages, and both anticipated that much advantage and profit would result to the company. As a result, whatever expense was incurred in reducing the theory to practice was borne by the company. The defendant applied for the patent in 1923, and pending the application the plaintiff manufactured machines embodying the improvement. This new type was extensively advertised in circulars, catalogues, and by other methods, and one of these circular letters in the name of the company and signed by the defendant, as general manager, states: "The primary object of this letter is to announce to the trade the successful completion of a year's experimenting and testing, which has resulted in the adoption of the Gaulin two-stage homogenizing valve."

The contention of the plaintiff, that the defendant made the invention, and developed, perfected and completed it, as a part of the duties of his employment for which he was paid, and pursuant to Davies's instructions; that he was not acting primarily for himself, but was acting solely for the benefit of

the company because he was instructed and paid to do so, as an argument that the judge might or should have so found, is strong, but is contradicted and overcome by the express finding that "the defendant was not expressly employed to develop or improve any particular process or machine; no original suggestion or request ever emanated from his employer looking toward such development or improvement, and the defendant never agreed to assign to the plaintiff any patent which he might procure." The judge further finds that "While in the plaintiff's employ, the defendant acquired no information as to manufacturing processes of a secret or confidential nature, nor, when leaving the plaintiff's service, carried away any knowledge or information which he either did not possess when he entered its employ or which he did not acquire in the ordinary course of his employment, as a result of his own study and observation."

On the facts the plaintiff contends that the case falls within and is governed by the cases of *Wireless Specialty Apparatus Co. v. Mica Condenser Co. Ltd.* 239 Mass. 158, *Standard Parts Co.* v. *Peck*, 264 U. S. 52, *Edisonia Ld.* v. *Forse*, 25 Rep. Pat. Cas. 546, and *British Reinforced Concrete Engineering Co. Ld.* v. *Lind*, 34 Rep. Pat. Cas. 101, while the trial judge and the defendant rest the defence upon the cases of *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 201, *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd., supra, Standard Parts Co.* v. *Peck, supra.*

It is said in *American Circular Loom Co.* v. *Wilson, supra,* at page 201: "One of the defendant's duties under his employment was to look after the plaintiff's machinery and to make improvements therein. The expenses of procuring the patent were paid by the plaintiff. Many machines embodying the invention and built under the patent have been constructed under the direction and supervision of the defendant at the expense of the plaintiff; and have been used by it in its business with his knowledge and consent; and the success of its business has largely depended upon its use of these machines. But these circumstances and the other facts which have been found do not show that the plaintiff is entitled to the property right in the invention itself and in

the letters patent which secure that right.   The invention and the patent thereon belong to the inventor, to whom the patent has been issued, unless he has made either an assignment of his right or a valid and enforceable agreement for such an assignment, even though it was his duty to use his skill and inventive ability to further the interests of his employer by devising improvements generally in the appliances and machinery used in the employer's business." Citing many authorities at page 201, and again, at page 202, quoting from *Pressed Steel Car Co.* v. *Hansen,* 137 Fed. Rep. 403, 415, decided in 1905, after a careful examination of previous decisions, it was said: "We have been referred to no case, nor have we been able to discover one in which, apart from express contract or agreement, and upon the mere general relations of employer and employé and of the facts and circumstances attending it, the employer has been vested with the entire property right in the invention and patent monopoly of the employé, or with anything other than a shop right, or irrevocable license, to use the patented invention.   Such a right in the employer, the employé may be estopped to deny, by the fact of his employment and his conduct in relation to the use of his inventions by his employer, and to that extent and no further have the cases gone."

In *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd., supra,* the defendant and others were employed by the plaintiff in experimental work in developing a method of manufacturing and producing magneto condensers to be sold to manufacturers of electrical apparatus.   The inventions there in controversy were made while the inventors were wholly engaged in "experimental work to develop a method of manufacturing magneto condensers"; that, for the time being, from June until October, was their sole employment. In that case the court found that the plaintiff had an interest in the invention which its workmen created "while engaged in this special work," and that to hold otherwise would defeat the purpose for which they were engaged.   It further held that in such a case the nature of the employment imposes on the employee such a relation of trust and confidence as

estops him from claiming as his own property that which he has brought into being solely for the benefit and at the express procurement of his employer. Under such circumstances, that is of estoppel, the absence of an express agreement that the ownership shall be in the employer is not fatal. This is the doctrine of *Solomons* v. *United States,* 137 U. S. 342. *Gill* v. *United States,* 160 U. S. 426. *Pressed Steel Car Co.* v. *Hansen, supra.*

Upon a consideration of all the evidence and the briefs, we are of opinion that the case at bar in principle is similar to and must be governed by *American Circular Loom Co.* v. *Wilson, supra.* See also *American Stay Co.* v. *Delaney,* 211 Mass. 229. It results that the decree must be affirmed, with costs.

*Ordered accordingly.*