JOSEPH BEAUDETTE & another *vs.* GEORGE C. GRAHAM & others.

Suffolk.   January 14, 1929. — March 27, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction,* Suit by minority stockholders for corporation. *Release. Estoppel. Corporation,* Minority stockholders' suit, Officers and agents. *Fiduciary.*

A suit in equity purporting to be brought against a corporation, its officers and those controlling its affairs, by a minority stockholder for himself "and all other stockholders" to vindicate the rights of the corporation for wrongs committed by the defendant officers, is not barred by a general release under seal given before the suit was begun by the plaintiff in his individual capacity to the corporation and the defendant officers against whom relief is sought.

One, who was the president and general manager and, with a brother-in-law and an employee with small holdings of stock, formed the board of directors of a Massachusetts corporation, while drawing a substantial salary from the corporation, made trips at the corporation's expense for the purpose of interviewing different members of a concern with whom the corporation had large commercial dealings respecting a proposed newly invented machine and finally procured from such concern a letter purporting to give him personally the selling rights of the machine in a certain territory and containing a provision for cancellation upon thirty days' notice by either party. The stockholders of the corporation then voted to authorize an increase in its capital stock, and the directors voted to issue that stock to him in return for an assignment by him to the corporation of his rights under the contract. The value of the shares thus issued to him was many times in excess of any value that the so called contract had at the time of such issue. In a suit by minority stockholders in behalf of the corporation against him and others to set aside the transfer of shares and for coördinate relief, it was *held,* that

(1) In taking the contract in his own name, the defendant president held it as trustee for the company;

(2) The defendant president was not entitled to have rights under the contract reassigned to him, nor to an accounting respecting it;

(3) A final decree properly was entered directing the defendant president to return to the corporation such of the stock as he still owned, to procure and return to the corporation such of it as he had disposed of or to pay to the corporation its value, and to return to the corporation dividends which he had received on the stock; that the corporation pay a certain sum to the plaintiff to reimburse him for reasonable expenses incurred in the employment of counsel to institute and prosecute the suit; and that the defendants pay costs.

BILL IN EQUITY, filed in the Superior Court on September 13, 1927, and afterwards amended, by minority stockholders of Beaudette & Graham Company, who alleged that they brought the suit "in behalf of the plaintiffs and all other stockholders of" that company, for the purposes described in the opinion.

In the Superior Court, the suit was heard by *Cox, J.,* a stenographer having been appointed under the provisions of G. L. c. 214, § 24, Equity Rule 29 (1926), to take the evidence. Material facts found by the judge are stated in the opinion.

The release of the plaintiff Joseph Beaudette, referred to in the opinion was as follows:

KNOW ALL MEN BY THESE PRESENTS that I, JOSEPH BEAUDETTE, in consideration of one dollar to me paid by Harold L. French, C. L. French, Helen French Graham and George C. Graham and Beaudette & Graham Company, the receipt whereof is hereby acknowledged, do hereby remise, release and forever discharge the said Harold L. French, C. L. French, Helen French Graham, George C. Graham and Beaudette & Graham Company of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, which against the said Harold L. French, C. L. French, Helen French Graham, George C. Graham and Beaudette & Graham Company or their heirs and assigns

I now have or ever had from the beginning of the world to this date.

WITNESS my hand and seal this first day of December, 1926.

(Sgd.)   Joseph Beaudette   (Seal)

Signed in the presence of
(Sgd.)   Walter H. Foster

By order of *Qua,* J., the final decree described in the opinion was entered. The defendants appealed.

*R. T. Parke,* (*G. A. Morin* with him,) for the defendants.
*W. H. Foster,* for the plaintiffs.

SANDERSON, J.   This bill in equity is brought in behalf of the defendant Beaudette & Graham Company (hereinafter called the company), to set aside an alleged illegal issue to the defendant Graham of seven hundred fifty shares of the common stock of the company. Upon evidence reported the judge of the Superior Court found that the issue of this stock was illegal, and entered a decree ordering that Graham return to the company for cancellation a certificate of six hundred seventy-five shares held by him; that he procure and surrender to it for cancellation seventy-five additional shares of common stock or, in the alternative, pay into the treasury $2,625, representing the fair value of the seventy-five shares; that he also pay the company $1,350, being the amount of dividends on six hundred seventy-five shares received by him; that the company pay the plaintiffs $1,000 to reimburse them for reasonable expenses incurred in the employment of counsel to institute and prosecute the suit; and that the defendants pay costs.

When the evidence is reported, it is the duty of the court to examine it, reach its own conclusion as to the facts, and decide the case according to its own judgment, giving due weight to the findings of the judge. But findings made by him after a hearing in which witnesses have testified orally before him will not be reversed unless plainly wrong. *Cook* v. *Mosher,* 243 Mass. 149, 152, 153. *Weinstein* v. *Miller,* 249 Mass. 516, 520.

The judge found· that it would have been useless for the plaintiffs to apply to the company or its officers to institute suit against the defendant Graham. The plaintiff Joseph Beaudette owned one share of common stock of the company, and his·wife, the plaintiff Ruth G. Beaudette, owned eighty-six shares of preferred and seven hundred twenty-seven shares of the common stock given to her by her husband on May 11, 1927. The authorized capital stock of the company was seven hundred fifty shares of preferred and one thousand seven ·hundred fifty shares of the common, and Graham owned within sixty-five shares of enough to give him control of the company. At the meeting held February 8, 1.926, the preferred stock was increased to one thousand five hundred shares and the common to two thousand five hundred shares and the terms and manner of disposition of the additional stock were left to the board of directors as authorized by G. L. c. 156, § 41.

On February 19, 1926, the directors, who were the defendant Graham, being the president and general manager of the company, the defendant French, a brother-in-law of Graham who held two shares of common stock, and the defendant McClintock, an employee holding one share, unanimously · voted to purchase Graham's rights in a contract dated February 18, 1926, between him and the Savage Arms Corporation of New York (hereinafter called the corporation), whereby Graham "acquired valuable and exclusive rights in the sale of ice cream cabinets manufactured by said Corporation"; and in full payment therefor it was voted to issue to him seven hundred fifty shares of common stock of · the company, provided that Graham would relinquish and deliver to it on demand one share of such common stock for each two shares of unissued preferred stock when sold by it· for cash. The contract referred to in this vote was in the form of a letter from the corporation to Graham, written at Graham's request, purporting to give him the selling rights· in a certain territory and containing a provision for cancellation upon thirty days' notice by either party. This contract, so called, was assigned to the company by Graham, March 31, 1926, the corporation assenting thereto. The first electric

cabinets manufactured by the corporation were sold in March or April, 1926. When the contract was obtained by Graham none of the freezing cabinets had been marketed and competitors were then selling similar machines. The seven hundred fifty shares of common stock were issued to Graham on February 19, 1926. Graham reported to the stockholders at their meeting on February 8, 1926, that about eighty-five per cent of the company's business was in washing machines and most of this was with the corporation; that in 1925 the company sold more Savage washers than any other company in the country, and took about fifteen per cent of the factory output of the corporation. In the years 1923 and 1924, the corporation was engaged in experimental work upon a freezing machine and Graham conducted experiments in adapting the machine for use in connection with ice cream cabinets; he had several interviews with different officers of the corporation and made some suggestions to the inventor in its employ; on some occasions when he made trips to Utica and New York City where he interviewed these officers on this subject the company paid his expenses, but on one trip to Connecticut to interview the inventor he paid his own expenses. The corporation finally perfected a machine to put on the market.

The common stock of the company was found to have a substantial value when the vote was passed, and the value of the seven hundred fifty shares issued to Graham was many times in excess of any value that the so called contract between him and the corporation had at the time the stock was issued to him. The defendants offered in evidence a release under seal of all demands from the plaintiff Joseph Beaudette to the defendant Graham and the company, dated December 1, 1926. The judge excluded the release subject to the defendants' exception.

When suit is brought by a stockholder in a representative capacity to vindicate the rights of the corporation for wrongs committed by corporate officers, it is the corporation alone whose interests are immediately concerned. Such wrongs have no relation to the stockholder "except as he has a derivative and indirect interest." *Hayden* v. *Perfection Cooler*

*Co.* 227 Mass. 589, 591. "The election to disaffirm a fraudulent corporate transaction belongs to and is exercised in the right and name of the corporation and not of the stockholder." *Pollitz* v. *Gould,* 202 N. Y. 11, 17. In the case at bar the release by the plaintiff Joseph Beaudette to the company and Graham is not a release from the company to Graham and cannot affect its rights against Graham in a suit brought either by it or in its behalf by a stockholder. See *Gilhooley* v. *Sanborn,* 128 Mass. 485, 486. Requests one to five inclusive relating to this matter were properly denied. There is nothing inconsistent with this conclusion in *Willett* v. *Herrick,* 258 Mass. 585, 594, 595.

Directors of corporations are fiduciaries bound to the strictest good faith in caring for and managing its property. Their paramount duty is to the corporation and their personal pecuniary interests are subordinate to this paramount duty. *Elliott* v. *Baker,* 194 Mass. 518, 523. *Allen-Foster-Willett Co., petitioner,* 227 Mass. 551, 556. *Putnam* v. *Handy,* 247 Mass. 406, 409, 411. *Abbot* v. *Waltham Watch Co.* 260 Mass. 81, 96. As a director Graham had the duty of "reasonably protecting and conserving the interests of the corporation." *Manning* v. *Campbell,* 264 Mass. 386, 390. The judge refused to grant the defendants' request to find that the contract was the private property of Graham and not held in trust. Ten days after Graham joined in the vote to increase the capital stock, and while he was president and general manager of the company drawing a substantial salary, he obtained from the corporation at his own request and in his own name the right to sell cabinets in a designated territory and parted with nothing of value for this right. At this time the company was engaged in selling appliances manufactured by the corporation and others, and the right obtained was of a character which the company would acquire if it could, and Graham was the person to acquire it for the company and on whom the company had a right to rely to act in the matter for its interests. In taking the contract in his own name Graham held it as trustee for the company. *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 206, 207. *York & North Midland Railway* v.

*Hudson,* 16 Beav. 485, 500. If officers "by means of their relations to the corporate management . . . secure to themselves undue advantage over their associates, they cannot retain it." *Brewer* v. *Boston Theatre,* 104 Mass. 378, 396. The conclusion that the stock was illegally issued was right and Graham is not entitled to a reassignment of the contract or to any accounting concerning it from the company. *Parker* v. *Nickerson,* 112 Mass. 195, 196. *Keith* v. *Radway,* 220 Mass. 532, 535. *Duncomb* v. *New York, Housatonic & Northern Railroad,* 84 N. Y. 190, 202. *York & North Midland Railway* v. *Hudson, supra.*

It becomes unnecessary to consider other grounds upon which the contention is made that the issue of stock to Graham should be set aside. No reversible error has been shown in the parts of the decree awarding compensation to the plaintiffs and requiring Graham to restore dividends received and to account for the seventy-five shares not represented by the certificate for six hundred seventy-five shares of stock. Cases like *Manton-Gaulin Manuf. Co. Inc.* v. *Colony,* 255 Mass. 194, 199, holding that the mere fact that the relation of employer and employee exists is not enough to give the employer a vested right in the invention and patent monopoly of the employee, are decided on principles not applicable to the case at bar.

*Decree affirmed with costs.*