PRODUCTION MACHINE COMPANY *vs.* WILLIAM S. HOWE.

Suffolk. February 5, 1951. — May 9, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Corporation*, Officers and agents. *Fiduciary*.

One who was the managing officer and a director of a corporation was liable to it on the ground of breach of his fiduciary duty for the amount of profits realized by a concern owned by him from business which the corporation was capable of undertaking but which he obtained for his concern without full disclosure of the facts to the other directors of the corporation, and for an amount equivalent to the difference between interest at a fair rate and interest at a smaller rate actually charged on

improper loans made by the corporation to his concern at his instance and subsequently repaid by his concern; and, in the circumstances, he forfeited his right to the salary paid him by the corporation during the period of such breaches of duty and must repay the salary to it.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated September 16, 1942.

The suit was heard by *Donahue*, J., on a master's report.

*H. Finn*, (*D. Cohen* with him,) for the defendant.

*D. E. Murphy*, (*W. A. Ryan* with him,) for the plaintiff.

WILLIAMS, J. This is a bill in equity for an accounting and for the recovery of damages for alleged breaches of fiduciary duty by the defendant while he was president, treasurer, and a director of the plaintiff corporation. The report of a master has been confirmed and a final decree entered ordering that the defendant pay to the plaintiff the sum of $29,957.59 with costs. The defendant has appealed from the interlocutory decree confirming the master's report and from the final decree.

The material subsidiary facts found by the master and his conclusions are substantially as follows. In 1920 the defendant with William V. Ellis and Carl E. Pickhardt, two investment brokers having offices in Boston, acquired control of the plaintiff, a manufacturing corporation, located in Greenfield. The three became members of the board of seven directors, which in 1930 was reduced to the number of five. Howe, Ellis and Pickhardt were the managing members of the board, and the active control of the corporation was left almost entirely to Howe. He was an experienced manufacturer, and because of their friendship for him and of their recognition of his superior knowledge of the business Ellis and Pickhardt "placed particular trust and confidence in him." During the period with which we are concerned Howe was the owner of substantially all of the stock of Granite State Mowing Machine Company, a corporation located in Hinsdale, New Hampshire. It will be convenient to refer hereinafter to this corporation as Granite and to the plaintiff corporation as Production. Granite manufactured lawn mowers. Production manu-

factured polishing machines, a line of so called "heavy" machinery. Howe while managing Production continued to operate Granite with the acquiescence of Production's directors. Production's bookkeeping, concerning which there is no contention of inaccuracy, was carried on at the office of Granite by an employee of Granite under the supervision of Howe. Production has "done considerable business back and forth with . . . [Granite]. Part of this business has consisted of the manufacture by . . . [Granite] of material for . . . [Production]; in other instances the reverse was true." Production and Granite "have at times assisted each other financially. In early days . . . [Granite] pledged its credit for substantial amounts for . . . [Production's] benefit. . . . [Granite] was never paid, nor did it seek payment for the assistance thus given by it. Howe . . . has also repeatedly lent his personal credit for the benefit of . . . [Production]" through the indorsement of its notes. No differences of a serious nature appear to have arisen between Howe and the other directors until 1941. The master finds, however, that the "close association of . . . [Production] and . . . [Granite], together with the fact that Howe managed both businesses, was in some respects unfortunate, because Howe came to regard the two businesses, in many respects at least, as a single enterprise. . . . [T]his close association of the two companies also accounts in part for Howe's failure to recognize as accurately as he should have the legal distinction which existed between the duty owed by him to . . . [Granite], upon the one hand — which business by virtue of his stock ownership he has always controlled — and, upon the other hand, the fiduciary position he occupied toward . . . [Production]."

In February, 1941, Howe learned of a saw sharpening machine which had been invented by one Lindsey of Rochester, New York. He sent one Baldwin, an employee of Production, to examine the machine, and on the latter's favorable report corresponded with Lindsey in reference to a license to manufacture it. A letter to Lindsey enclosing a revision

of a license agreement submitted by Lindsey was signed by Howe "Production Machine Company" and stated that the machine was to be manufactured by "Granite State Mowing Machine Company . . . a small concern which the writer owns wholly." Baldwin was sent by Howe to Rochester a second time and made several trips to Hinsdale in connection with preparations to manufacture the saw sharpening machine. He also worked on a set of shop or working drawings for the machine. Lindsey and Granite entered into a contract for the manufacture of these machines under license and from December, 1941, until August 31, 1945, Granite manufactured and sold one hundred seventy-two of these machines at a net profit to Granite of $10,258.02. Until this time Granite's business had been confined to the manufacture and sale of lawn mowers and similar equipment. The Lindsey contract represented its first entrance into the manufacture of other small tools. At the time of the Lindsey contract Howe "knew that . . . [Production] desired to enlarge its field of manufacture to include anything which it was equipped to make, and . . . [it] was equipped to manufacture this saw sharpener. In so far as it is a question of fact, I find that Howe, as a matter of fiduciary duty, ought to have called this saw sharpener to the attention of . . . [Production's] board of directors before consummating the contract with Lindsey, and thus give . . . [Production] the chance, if its directors thought it wise, to negotiate with Lindsey. Howe did mention this saw sharpener to either Pickhardt or Ellis, or both, but at no time did he make to them or to any of the other directors the full disclosure which as a fiduciary he owed to . . . [Production]. In failing to make such disclosure he did not act in bad faith. Rather, he failed to realize his duty in the premises and assumed that as manager of . . . [Production's] business he had the right to decide such a matter himself without referring it to any one else."

In 1941 Howe utilized the services of an employee of Production on his personal work, the value of the employee's time being $10.

Through the years a so called "open" account had been kept on Production's books showing the respective debits and credits between Production and Granite. The existence of the account was known to Production's directors. In January, 1941, Howe caused to be opened on the books of Production a new "loan" account. From January 10, 1941, to September 30, 1941, this account showed various loans to Granite totaling $20,550 and a notation that interest on these loans was to be charged at the rate of one and one half per cent. A large part of the money so borrowed from Production by Granite was used for purposes in which Production had no interest. Pickhardt and Ellis were unaware of any of these loans except one amounting to $3,500. The master states, "I find . . . that, in thus loaning so much money to . . . [Granite] Howe acted without authority, that he was guilty of a breach of fiduciary duty in doing so without obtaining the assent of the other directors, and that he did not act in good faith." These loans are shown by the "loan" account to have been paid on February 28, 1942, by a transfer to that account from the "open" account of a credit to Granite of $10,898.04. In fact at that time Production owed Granite on the "open" account only $10,061.20. The difference of $836.84 essentially was borrowed from Production by Howe to pay the balance owed by Granite on the interest bearing loans. The master finds "that a fair rate of interest on these loans was six (6) per cent per annum and that at this rate the balance of interest owed by . . . [Granite] to . . . [Production] on this loan account as of February 28, 1942, was $788.52."

Howe resigned his offices in Production on March 9, 1942. During 1941 he was paid a salary of $7,500 and from January 1, 1942, until the time of his resignation was paid a salary of $1,250. It is the contention of Production that Howe should be ordered to return these amounts of salary. At the time of his resignation Howe owed Production on his personal account $600.88.

In his order for a final decree the judge of the Superior Court has stated the items which were considered by him

in arriving at the total of $29,957.59 which by final decree Howe has been ordered to pay to Production. These items are as follows:

$10,258.02  the amount of Granite's profits on the Lindsey contract.

   10.00  the amount paid by Production for the time of an employee of Production while doing work for the defendant.

  788.52  the difference in the amount of interest due on the "loan" account between the rate of one and one half per cent, which was charged, and a rate of six per cent.

  836.84  the amount borrowed by Howe from Production to pay the balance on the loan account.

8,750.00  the amount of salary paid by Production to the defendant after January 1, 1941.

  600.88  the amount due to Production on the defendant's personal account.

The master states that his ultimate findings of fact are based upon all of the evidence adduced before him and do not rest upon his subsidiary findings alone. As the evidence is not reported we are bound by the master's conclusions, as was the trial judge, unless the subsidiary findings included in the report are sufficient in themselves to demonstrate that the conclusions are unsound in law. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. See *MacLeod* v. *Davis,* 290 Mass. 335, 337–338.

The relation of the defendant to the plaintiff corporation was fiduciary in character. *Lazenby* v. *Henderson,* 241 Mass. 177, 180–181. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 4. *Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, 196. Out of this relationship arose the duty reasonably to protect the interests of the corporation. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 476. *Durfee* v. *Durfee & Canning, Inc., supra.* This was a paramount duty and the personal pecuniary interests of the officer were subordinate

to it. *Beaudette* v. *Graham,* 267 Mass. 7, 12. Breach of the duty could be found although no corruption, dishonesty, or bad faith was involved. *Little* v. *Phipps,* 208 Mass. 331. *Lazenby* v. *Henderson, supra.* In obtaining the Lindsey contract without fully disclosing the facts to his associate directors the defendant, although not acting in bad faith, failed to recognize his fiduciary obligation. He is responsible for the profits of his wholly owned corporation resulting therefrom. As was said in *Durfee* v. *Durfee & Canning, Inc., supra,* at page 196, "a director, who fraudulently or in violation of his fiduciary relationship diverts profits from the corporation, is personally liable though the profits are acquired by an agency controlled by the director or a third party." See *Lazenby* v. *Henderson, supra,* 181; *Beaudette* v. *Graham,* 267 Mass. 7, 12–13; *American Agricultural Chemical Co. of Massachusetts* v. *Robertson,* 273 Mass. 66, 83–88.

It was found that the loans totaling $20,500 which the defendant caused to be made to Granite in 1941 were not made in good faith. Although no loss of principal was incurred by the plaintiff, it was entitled to be paid interest on the improper loans at the rate of six per cent. The assessment to the defendant of the difference between the amount of interest computed at this rate and the amount which the defendant had caused Granite to be charged on the books was correct. *Bowen* v. *Richardson,* 133 Mass. 293, 296. *Prudential Trust Co.* v. *McCarter,* 271 Mass. 132, 158. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 11. Restatement: Restitution, § 156.

There can be no doubt that the defendant may properly be ordered to pay the amount of his personal indebtedness to the plaintiff and the amount which he caused to be borrowed from the "open" account to pay the balance due from Granite on the "loan" account.

It is proper to order payment to be made by the defendant for the time of the plaintiff's employee while the latter was engaged in the defendant's business.

The last matter to be considered relates to the repayment of salary by the defendant. During the period for which the

salary in question was paid, the Lindsey contract was executed, the loans were made to Granite, and the transfer from the "open" to the "loan" account was effected. The acts of the defendant were breaches of his fiduciary duty. The report gives us little information as to the benefits conferred on the corporation by the services of the defendant during this same period. It is suggested in *Lydia E. Pinkham Medicine Co.* v. *Gove, supra,* at page 4, that compensation to· a disloyal agent may be "apportioned" in relation to his services properly performed but that "Each case must be determined in the discretion of the court with reference to the peculiar factors found to be present." In our opinion the conduct of the defendant during the period when the salary in question was being paid was such that he must be held to have forfeited his right to compensation. See *Little* v. *Phipps,* 208 Mass. 331, 333–334; *Raymond* v. *Davies,* 293 Mass. 117, 119–120.

The interlocutory decree confirming the master's report is affirmed. The final decree provides for the payment by the defendant of the sum of $21,244.26 with interest amounting to $8,713.33 computed to August 29, 1950, the date of the decree. The decree should be modified by adding interest on the principal sum of $21,244.26 from August 29, 1950, to the date of the final decree after rescript. As.so modified it is affirmed with costs.

*So ordered.*