**In re TUFTS ELECTRONICS, INC.,**
**Tufts Radio & Electronics, Inc.**

**Richard G. KAGAN, Trustee, Plaintiff,**

**v.**

**Charles D. MARTIN, Defendant.**

**Bankruptcy Nos. 83–00199–HL,**
**83–00198–HL.**
**Adv. No. 83–0615.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 7, 1983.

Jonathan Levin, c/o Davis, Malm & D'Agostine, Boston, Mass., for plaintiff.

Joseph S. Moran, Boston, Mass., for defendant.

## MEMORANDUM ON PLAINTIFF'S COMPLAINT TO IMPOSE CONSTRUCTIVE TRUST

HAROLD LAVIEN, Bankruptcy Judge.

Trial was held on August 9, 1983 on the trustee's complaint against Charles D. Martin seeking a constructive trust on a piece of property located in Hudson, New Hampshire. The plaintiff, Richard G. Kagan ("Kagan"), is the trustee in bankruptcy of Tufts Radio & Electronics, Inc. and of Tufts Electronics, Inc. (referred to collectively as the "debtors"), both of which filed bankruptcy petitions on February 14, 1983. Charles D. Martin is the owner of the land in question and the sole shareholder of the debtors. The complaint, in essence, alleges that Mr. Martin purchased and maintained the property in question with corporate funds and seeks to have the Court impose a constructive trust or other equitable lien over the property. The Court, having heard the evidence presented at trial, makes the following findings of facts and rulings of law.

Tufts Radio & Electronics, Inc. was incorporated in Massachusetts in 1973 with a capitalization of $3,200. At all times relevant to this proceeding, Martin has been president, treasurer, sole director, and sole shareholder of the Tufts Radio & Electronics, Inc. Tufts Radio & Electronics, Inc., prior to August, 1981, operated from Medford, Massachusetts, where it leased space at the rate of $2,800 a month.

On April 23, 1981, Mr. Martin, together with his wife, borrowed $25,000 from the Shawmut County Bank, Medford, Massachusetts. The loan was payable over a five-year period at the rate of 16% per annum and was secured by a second mortgage on their home in Arlington, Massachusetts. Monthly payments of interest and principal totalled $607.96 per month. Mr. Martin testified that he "temporarily loaned" Tufts Radio & Electronics, Inc. $21,500 between April 24 and April 29, 1981. There was no written documentation nor any loan agreement. Martin testified that although the money was borrowed at 16% and he then had no present prospects, his "real intention" in taking this bank loan was to look for property in which to invest individually so that his corporation would pay less rent and pay it to him.

In July, 1981, Martin entered into a purchase and sale agreement with an unrelated third party for the property in question. He paid a deposit of $5,000, allegedly from his personal funds. Although it is not clear, this $5,000 may well have been largely the balance of the bank loan. At the closing, Martin personally assumed an existing mortgage on the property in the amount of $64,007.67 with payments of $787.22 per month. The balance of the purchase price was paid with a check for $21,984.08 drawn from Tufts Radio & Electronics, Inc. with himself as payee, which he had endorsed over to the seller. Allegedly, the check was repayment of the loan of $21,500 made by Mr. Martin to the debtor—the $484 remainder being a loan to Martin which he repaid on November 15, 1981. Subsequently, Tufts Electronics, Inc. was incorporated.[1]

Subsequently, Martin proceeded to "lease" the property to the debtors, based upon a one year lease commencing August 13, 1981. The rent totalled $1,895 per month, with the debtors also paying all real estate taxes, insurance, utilities, telephone charges, water, heat, and maintenance of the interior of the premises. Although Martin testified that he may have consulted a realtor in fixing the rental price, he admitted that the rental broke down to three components—the $607.96 monthly mortgage payment on the original bank loan of April 23, 1981, the $787.22 assumed monthly mortgage payment, and a $500 payment made directly to Martin. Indeed, there was testimony by Martin that he often paid the mortgages with checks directly from the corporation, rather than his own personal checks, in lieu of the entire payment to him. Further, in some of the months preceding

the filing of the bankruptcy petition, the debtor only paid the mortgages and not the additional $500 payment to Martin.

The lease also required the debtors to pay all real estate taxes and make usual, necessary, or required interior repairs. During the course of the debtors' lease, the debtors paid for various improvements to the real estate, including fencing, paving, insulation, concrete, among others. In the year preceding the petition filing, the debtors' payments for such items was approximately $3,500. During the same period, Martin expended approximately $3,100 for three items; these, however, were made in late 1982, preceding the bankruptcy petition filings on February 14, 1983.

■ A constructive trust will be imposed whenever necessary to satisfy equity. *Milne v. Burlington Homes, Inc.*, 117 N.H. 813, 816, 379 A.2d 198, 199–200 (1977); *Barry v. Covich*, 332 Mass. 338, 124 N.E.2d 921 (1955). This includes fraud, actual or constructive, an abuse of confidence, or any form of questionable conduct which allows a party to enjoy property which, in equity and good conscience, he should not enjoy.[2] *Coelho v. Coelho*, 2 Mass.App. 433, 313 N.E.2d 891 (1974); *Patey v. Peaslee*, 101 N.H. 26, 131 A.2d 433 (1957); 76 Am.Jur.2d *Trusts*, § 221 (1975).

The fiduciary duty owed by a director has been discussed in many cases. *See, e.g., Production Machine Co. v. Howe*, 327 Mass. 372, 377–78, 99 N.E.2d 32 (1951) (the duty "to protect the interests of the corporation is a paramount duty and the personal pecuniary interest of the officer ... [is] subordinate to it"); *Durfee v. Durfee & Canning,*

---

1. It is not clear whether Tufts Electronics, Inc. succeeded Tufts Radio & Electronics, Inc., or if the two corporations acted as one. Further, although the defendant's post-trial brief alleged that Tufts Electronics, Inc. was a New Hampshire corporation, pleadings of the debtor indicate that it was claimed that Tufts Electronics, Inc. was a Massachusetts corporation. Neither points, however, are particularly relevant to this Court's holdings since neither party has brought to the Court's attention any difference in the laws of the two states on the issues involved.

2. As a threshold matter, one may question as to which state's laws should be applied. The property in question is located in New Hampshire, and at least one corporation has been incorporated in Massachusetts. *See* note 1, *supra.* An examination of Massachusetts law and New Hampshire law, however, reveals that both states' laws are similar on the relevant issues.

*Inc.,* 323 Mass. 187, 196, 80 N.E.2d 522 (1948) (their "paramount duty is to the corporation, and their personal pecuniary interests are subordinate to that duty"); *George H. Gilbert Mfg. Co. v. Goldfine,* 317 Mass. 681, 685, 59 N.E.2d 461, 463 (1945) ("primary duty is to act solely in the interest of the corporation"); *Spiegel v. Beacon Participations, Inc.,* 297 Mass. 398, 410, 8 N.E.2d 895, 904 (1937) ("bound to act with absolute fidelity and must place their duties to the corporation above every other financial or business obligation"); *Rosenblum v. Judson Engineering Corp.,* 99 N.H. 267, 271, 109 A.2d 558 (1954); *Mica Products Co. v. Heath,* 81 N.H. 470, 128 A. 805 (1925); *see also* Tilden, *The Fiduciary Duty of Corporation Directors in Massachusetts,* 28 B.U.L. Rev. 265, 269 (1948); Comment, *Fiduciary Duty of Directors—Burden of Proof on Damages,* 29 B.U.L.Rev. 129 (1949). The standard characterized by these cases is expressed most fully by the Court in *Beaudette v. Graham,* 267 Mass. 7, 165 N.E. 671 (1929):

> Directors of corporations are fiduciaries bound to the strictest good faith in caring for and managing its property. Their paramount duty is to the corporation and their personal pecuniary interests are subordinate to this paramount duty.

*Id.* at 12, 165 N.E. at 673. In *Beaudette,* the director-president-defendant (Graham) of Beaudette & Graham Company secured, in his own name, the right to sell exclusively a freezer soon to be in manufacture by the grantor of the franchise. The Court held that

> At this time [Beaudette & Graham Company] was engaged in selling appliances manufactured by the [grantor] and others, and the right obtained was of a character which the company would acquire if it could, and Graham was the person to acquire it for the company and on whom the company had a right to rely to act in the matter for its interests. In taking the contract in his own name Graham held it as trustee for the company.

Id. at 12; 165 N.E. at 673.

Also of note is *Production Machine Co. v. Howe,* 327 Mass. 372, 99 N.E.2d 32 (1951).

Here, the defendant was a director of the plaintiff ("Production") and also the manager and owner of substantially all of the stock of Granite State Mowing Machine Company ("Granite"). The defendant, while still involved with both companies, learned of a saw sharpening machine which had been invented by one Lindsey. He procured this contract on behalf of Granite and not Production. The court held that:

> At the time of the Lindsey contract Howe 'knew that . . . [Production] desired to enlarge its field of manufacture to include anything which it was equipped to make, and . . . [Production] was equipped to manufacture this saw sharpener. In so far as it is a question of fact, . . . Howe, as a matter of fiduciary duty, ought to have called this saw sharpener to the attention of . . . [Production's] board of directors before consummating the contract with Lindsey, and thus give . . . [Production] the chance, if its directors thought it wise, to negotiate with Lindsey.'

327 Mass. at 375, 99 N.E.2d 32. The court concluded that the defendant had breached his fiduciary duty and that he was "responsible for the profits of his wholly owned corporation resulting therefrom." *Id.* at 378, 99 N.E.2d 32.

In the case at bar, the operative facts are not in dispute. It was the defendant's intention to purchase commercial property in New Hampshire and move the company there in order to reduce leasing costs. *See* defendant's brief at page 4. Since he was the sole voice of the debtor, that had to be the debtor's intention and as a matter of fact, the debtor's very real need. The $21,500, despite its origin, was at the time of purchase, assets of Tufts Radio & Electronics, Inc. The debtor, in fact, made the payments on the loan and the purchase money mortgage. There was no evidence that it was unable to complete the purchase on its own behalf. As a director, Martin's first duty was to the debtors, not himself. Once he determined that the debtors needed to move to a cheaper

rental and that this could be accomplished best by purchasing this building, his first duty would be to purchase the property on behalf of the corporation, if that were feasible. Here, it was clearly in the debtors' interest to purchase rather than lease the property. The loan and purchase money mortgage payments totalled $1,395, while the lease called for monthly payments of $1,895. The debtor paid the taxes and most of the normal landlord expenses. Indeed, the debtors often paid the mortgage payments directly. A person will not be permitted to do business in corporate form and obtain all of the benefits thereof, and then ignore his fiduciary duty to the corporation when it no longer suits his purpose. *In re Rodriguez,* 24 B.R. 12, 14 (Bkrtcy.S.D.Fla. 1982); *see also New England Investment Corp. v. Sandler,* 329 Mass. 230, 107 N.E.2d 16 (1952).

As for the debtors' ability to purchase the property on its own account, at trial, Martin described the $21,500 as a temporary loan. No documentation or agreement, however, was offered as evidence— only Martin's self-serving statement. Further, Tufts Radio & Electronics, Inc. was capitalized originally with only $3,200. Undercapitalization requires that loans by stockholders be examined as likely contributions to capital. *See Pepper v. Litton,* 308 U.S. 295, 309–10, 60 S.Ct. 238, 246–47, 84 L.Ed. 281 (1939); *In re Mobile Steel Co.,* 563 F.2d 692, 702–3 (5th Cir.1977). Without so deciding under the facts of this case, even if this Court finds the $21,500 not to have been a de facto capital contribution but a loan, the corporation did issue a check for $21,984.08 to Martin who immediately endorsed it over to the seller. The debtor could just as easily have issued the check directly to the seller on its own account. There was no evidence offered that in July,

1981 the debtor was unable to make the deposit. Bear in mind that the debtor was making the mortgage payment on the entire $25,000 loan, not just the $21,500. There was no evidence that the seller would not have sold to the corporation and, again, it was the debtor who was paying the purchase money assumed mortgage.

The trustee, however, is entitled only to an undivided share of the property equivalent to the proportion which his funds bore to the total funds. *See Provencher v. Berman,* 699 F.2d 568, 570 (1st Cir.1983). The trustee's funds include the $21,500.[3] Martin's contribution is limited to his $5,000 deposit.[4]

Other credits for the respective parties also may be available. To the degree that Martin paid for any improvements upon the property in question before February 14, 1983, he may have a prepetition claim. To the extent that he has paid any expenses since February 14, including mortgage payments, he may have an administrative claim. However, the trustee may have a claim for Martin's proportionate share of the purchase money mortgage payments made by the debtors. Finally, the trustee may have a fraudulent transfer action, 11 U.S.C. § 548, or a preference action, 11 U.S.C. § 547, against Martin for the "rental" payments made to or on behalf of Martin. These issues, however, are not before the Court today.

Accordingly, the Court finds that the trustee has a 81.13% undivided interest in the property located at 61 Lowell Road, Hudson, New Hampshire.

---

3. The $64,724.72 mortgage was signed for by the individual but was in fact paid by the debtors, either directly or indirectly. Although Martin personally assumed the mortgage, his liability will be limited to the deficiency, if any, as a result of the ultimate disposition of the land. Therefore, the mortgage cannot be weighed on either side of this equation.

4. The $5,000 deposit came directly from Martin's personal assets and, therefore, cannot be considered an asset of the debtors. Although it may have been largely part of the original $25,000 loan, it never became part of the debtors' assets.