LUTHER W. FAULKNER & others *vs.* LOWELL TRUST COMPANY &. others.

Middlesex.     November 15, 1933. — February 15, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Contract*, Construction.  *Agency*, Fidelity.

The chamber of commerce of a city, a national bank as trustee, and several individuals as subscribers, to further the industrial progress of the city, executed an agreement under seal, under which each subscriber agreed to pay on demand to the trustee such sums as might be assessed upon him by the trustee, and the trustee agreed to furnish to any one of five named banks, including the trustee, upon its making an industrial loan with the approval of a board composed of five subscribers chosen by the chamber of commerce and five other subscribers of whom each bank chose one, a certificate of participation in the obligations of the subscribers and in the additional security for the loan thereby afforded.  It also was provided that votes of the board recommending loans required "at least seven affirmative votes in order to be binding."  At a meeting of the board when only seven were present, a unanimous vote approved a loan by a bank whose president was one of the seven so voting; and the trustee issued a participation certificate.  The subscribers later being threatened with an assessment by reason of the failure of the borrower to pay the loan, a subscriber sought to avoid liability for such assessment on the ground that the vote authorizing the issuance of the certificate of participation was invalid because an officer of the lending bank had cast one of the seven required affirmative votes.  From a decree in effect declaring the vote valid, the plaintiff appealed.  *Held*, that
    (1) The agreement contemplated a balancing of conflicting interests in the membership of the board and action by a substantial majority of interested persons; seven impartial votes were not required;
    (2) The vote was valid.

BILL IN EQUITY, filed in the Superior Court on October 24, 1932, and described in the opinion.

The suit was heard by *Pinanski*, J., upon an agreed statement of facts. A decree entered by his order is described in the opinion. The plaintiffs appealed.

*Woodbury F. Howard*, for the plaintiffs.

*J. M. Graham*, for the defendants.

LUMMUS, J. In order to aid in the financing of industries in Lowell and thereby to further the industrial progress of that city, an agreement was made on May 1, 1928, and signed by the Lowell Chamber of Commerce, the Appleton National Bank of Lowell, as "trustee," and various persons, including the plaintiffs, as "subscribers." Each subscriber agreed under seal to pay on demand to the trustee such sums as might be assessed upon him by the trustee, not exceeding in all a specified limit. The trustee agreed to furnish to any of five banks, including the trustee, making an industrial loan with the approval of the Board of Industrial Fund Directors, a certificate of participation in the obligations of the subscribers and in the additional security thereby afforded. The Chamber of Commerce was charged with the duty of appointing from the body of subscribers five of the ten members of the Board of Industrial Fund Directors, while each of the five banks named was to appoint one member, who was also required to be a subscriber. It was provided that "all votes recommending loans shall require at least seven (7) affirmative votes in order to be binding." The active business to be done under the agreement was to end on May 1, 1931.

On or about October 16, 1928, a loan of $25,000 was made to the Model Shoe Company, Inc., by the defendant Lowell Trust Company, one of the five banks named in the agreement, and the trustee issued to that bank a participation certificate. Various renewals of the loan were made, all upon participation certificates, and the loan was reduced to $15,000. On April 26, 1931, the Board of Industrial Fund Directors voted to grant another participation certificate for another renewal of the loan, and such a certificate was issued upon the renewal of the loan by the Lowell Trust Company upon a demand note. When that vote of the Board of Industrial Fund Directors was taken,

only seven members were present, so that the affirmative vote of every one was necessary for the approval of the renewal of the loan and the issue of a participation certificate. One of them was George M. Harrigan, then and for a long time past the president and a director of the Lowell Trust Company, the lender, and the agent of the Lowell Trust Company in the making and renewal of the loan.

On December 16, 1931, under order of the defendant commissioner of banks, the defendant Lowell Trust Company closed its doors and went into liquidation. On July 22, 1932, the loan to the Model Shoe Company, Inc., then amounting to $12,500 with interest from October 15, 1931, remaining unpaid, and, that company having made an assignment for the benefit of its creditors, the Lowell Trust Company demanded of the trustee that it levy an assessment upon the subscribers to make good its loss, and the trustee threatened to levy such an assessment. The plaintiffs brought this bill on October 24, 1932, against the trustee, the Lowell Trust Company and the commissioner of banks, to restrain any such assessment and to obtain a cancellation of the participation certificate. The Lowell Chamber of Commerce, though not formally made a defendant, answered to the bill, and was treated as a party. Thus it became bound by the result of the case. *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196, 199, 210. Compare *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3. The defendant commissioner of banks, by way of counterclaim under Rule 32 of the Superior Court (1932), prays that an assessment may be ordered.

The Superior Court entered a final decree, giving relief on the counterclaim by ordering an assessment on the subscribers to be levied and collected. Impliedly the plaintiffs' bill was dismissed, though it would have been better practice had this been done expressly. The plaintiffs appealed.

This case does not require us to decide how far the acts of agents, trustees or corporate directors are invalidated by the fact that one or more of them may be interested on the other side of the bargain. *Copeland* v. *Mercantile Ins. Co.*

6 Pick. 198, 203. *New-York Central Ins. Co.* v. *National Protection Ins. Co.* 14 N. Y. 85. *Ferguson & Fries* v. *Gooch,* 94 Va. 1 (agents). *Flint* v. *Codman,* 247 Mass. 463, 471 (partners). *Hayes* v. *Hall,* 188 Mass. 510 (trustees). *Lazenby* v. *Henderson,* 241 Mass. 177. *Guay* v. *Holland System Hull Co.* 244 Mass. 240. *Beaudette* v. *Graham,* 267 Mass. 7 (directors). *Crowell & Thurlow Steamship Co.* v. *Crowell,* 280 Mass. 343, 361. *Geddes* v. *Anaconda Copper Mining Co.* 254 U. S. 590, 599. *Irving Bank-Columbia Trust Co.* v. *Stoddard,* 292 Fed. Rep. 815. *Hellier* v. *Baush Machine Tool Co.* 21 Fed. Rep. (2d) 705 (interlocking directors). In this connection it is to be noticed that directors in relation to stockholders (*Goodwin* v. *Agassiz,* 283 Mass. 358), and stockholders in relation to the corporation (*Bell* v. *Fred T. Ley & Co. Inc.* 278 Mass. 60, 75; *United States Steel Corp.* v. *Hodge,* 64 N. J. Eq. 807, 813), are not held to the full measure of fiduciary duty.

The reason why it is unnecessary to decide the question just mentioned is that the agreement under which the Board of Industrial Fund Directors was created impliedly gave to its members the right to act for both sides. All ten members were required to be subscribers. As such their direct interest lay in restricting the issuance of participation certificates. Five of them, chosen by the Chamber of Commerce, had no other interest, except their interest as citizens of the community. But each of the other five was chosen by a bank. In view of the personal interest of the five members chosen by the Chamber of Commerce, it is fair to infer that a member chosen by a bank was expected in part at least to represent that bank and protect its interest. The direct interest of each bank was to obtain participation certificates upon its own loans, and to have them refused upon the loans of others. None of the members was really impartial. If either group of five had been impartial, it would still have been impossible to obtain seven impartial votes. It is plain that seven impartial votes were not required or expected. The agreement contemplated a balancing of conflicting interests in the membership of the

board, and action by a substantial majority of interested persons. Accordingly, the vote of Harrigan was properly counted as one of the seven votes required.

*Decree affirmed with costs.*