STOP & SHOP, INC. *vs.* A. JOHN GANEM & others.

Suffolk. April 6, 1964. — June 26, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Landlord and Tenant,* "Percentage lease," Covenant to operate business on demised premises, Implied covenant, Reformation of lease. *Equity Jurisdiction,* Declaratory relief, Reformation. *Unfair Competition. Evidence,* Presumptions and burden of proof. *Equity Pleading and Practice,* Interlocutory decree, Appeal.

Under a long term, apparently complete lease of market premises to an operator of markets providing for payment of a substantial "minimum rental" not shown to be significantly below the fair rental value of the property, and of a further rent of a percentage "of all gross sales" above a stipulated amount made by the lessee on the leased premises, there was no implied covenant that the lessee would operate a market on the leased premises and nothing to preclude the lessee from ceasing

to operate a market there when its business judgment dictated such course.   [704–705]

In a suit by a lessee against the lessors of market premises for a declaratory decree that there was no implied covenant in the lease that the lessee would operate a market on the leased premises, where the lease provided for payment of a substantial "minimum rental" and a further rent of a percentage "of all gross sales" above a stipulated amount made by the lessee on the leased premises, the burden was on the lessors to show that the "minimum rental" was so far below the fair rental value of the leased premises as to support an implication of such covenant. [703]

Where the defendant in a suit for declaratory relief filed a counterclaim and an interlocutory decree sustained a demurrer thereto "with leave to amend denied," and a final decree in the plaintiff's favor was affected by the interlocutory decree but did not in terms dismiss the counterclaim, although it was intended to dispose of the entire case, an appeal by the defendant only from the final decree opened the interlocutory decree for review under G. L. c. 214, § 27, and the case was dealt with as though the dismissal of the counterclaim had been express.   [705]

In a suit in equity by the lessee against the lessors under a long term lease of market premises providing for payment of a substantial "minimum rental" and of a further rent of a percentage "of all gross sales" above a stipulated amount made by the lessee on the leased premises, allegations in a counterclaim by the lessors, that in negotiations for the lease the lessee represented to them that it "would continue to use" the premises as a market "throughout the term" and that the "volume of business would be so great" that the lessors "would receive . . . a percentage of gross sales," and that they "entered into the lease . . . with this understanding," did not support a conclusion that there was an express agreement, erroneously omitted from the lease, that the lessee would continuously operate the leased premises as a market, and did not warrant a reformation of the lease to embody such alleged agreement.   [705]

In a suit in equity by an operator of markets for a declaratory decree respecting a long term lease to it by the defendants of market premises providing for payment of a substantial "minimum rental" and of a further rent of a percentage "of all gross sales" above a stipulated amount made by the lessee on the leased premises, but not requiring the lessee to operate a market there, allegations in a counterclaim by the defendants that the lessee "has not in good faith operated the demised premises so as to obtain the greatest volume of sales at this location, but has opened wrongfully [two] other stores . . . [one within one-half mile, and the other within about one mile, of the leased premises], selling the same merchandise at lower prices," thereby diminishing sales at the leased premises, did not entitle the lessors to have the sales at the other two stores taken into account in calculating the percentage rental nor state a basis for the recovery of damages by the lessors, even though there was some overlap of the potential customer area of the two new stores with the leased premises, where there were no allegations in the

counterclaim that the lessee acted for other than sound business reasons or in unfair competition with the business at the leased premises. [705–707]

BILL IN EQUITY filed in the Superior Court on October 5, 1962.

The suit was heard by *Ford, J.*, on a demurrer to a counterclaim by the defendants and on the merits.

*Raymond M. Sullivan* for the defendants.

*Nathan T. Wolk* for the plaintiff.

WHITTEMORE, J.  The defendants in this bill for declaratory relief are lessors under a percentage lease.  They have appealed from the final decree in the Superior Court that ruled that the lease does not expressly or impliedly require the plaintiff, as lessee, to use the demised premises for any particular purpose or to keep the premises open and there engage in the supermarket business.  Except for brief testimony which is reported, the facts were stipulated.[1]

The lease, dated August 24, 1953, demised a lot and building at 154 Merrimack Street, Haverhill, for thirteen years and six months from September 1, 1953, for "the minimum rental" of $22,000 a year and the further rent of $1\frac{1}{4}\%$ "of all gross sales" above $1,269,230.60 "made by the Lessee on the leased premises during each twelve month period." But the percentage rent was to be paid only if sales at the demised premises and at premises in Lawrence exceeded $3,000,000 a year.  The lease recites that the Lawrence premises were leased to the plaintiff by the lessors of the Haverhill premises and certain other owners under a percentage lease containing a like limitation on the payment of percentage rent.  The record shows no other facts relative to the Lawrence premises or the business conducted therein. The other lessors of the Lawrence premises, by stipulation in, and order of, this court, have now become parties, and all parties have stipulated that the issues may be determined as though the owners of the Lawrence premises were not concerned.  We may, therefore, order declaratory re-

---

[1] Certain testimony offered by the defendants was excluded.  The defendants' brief does not argue its admissibility.

lief on the present record.   G. L. c. 231A, § 8.   Compare
*Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370.

The lease required that the lessee should pay the amount
of the increases in the annual real estate taxes and should
receive the amount of the decreases therein, measured on
the 1946 figure.

The lease does not state the purposes for which the prem-
ises are to be used.   Nothing therein in terms requires that
the premises be used for any purpose or bars the opening
by the lessee of places of business competitive to the les-
see's business in the demised premises.   The lease does,
however, require the lessee to use suitable cash registers to
record all sales, to keep accurate books, to furnish state-
ments of gross sales on demand, and at the end of each
yearly period to furnish such a statement certified by a
certified public accountant.   The testimony showed that
when the lease was made the plaintiff was engaged in the
supermarket business and that the lessors knew it.   The
premises prior to August 24, 1953, had been used for the
conduct of a market.

The plaintiff had occupied the premises as a supermar-
ket through 1962.   It had paid percentage rent in 1956
($2,288.15) and in 1957 ($377.21) but in no other year, and
had paid excess taxes in each year.   The plaintiff intended
to cease operating a supermarket in the premises shortly
after January 1, 1963, but to continue to pay the minimum
rent and any excess real estate taxes and otherwise to con-
form to the lease.   The defendant lessors had threatened
suit to compel the continued operation of a supermarket or,
alternatively, for damages.

The defendant lessors filed a counterclaim which alleged
that the plaintiff beginning in 1956 had opened two com-
peting stores in Haverhill, one within one-half mile and the
other within about one mile of the demised premises.   The
prayers of the counterclaim were (1) that the lease be re-
formed to provide that the plaintiff continuously operate
the premises as a supermarket, (2) that the plaintiff be
ordered to pay to the defendants as part of the rent of the

demised premises 1¼% of gross sales from all the plaintiff's stores in Haverhill in excess of $1,269,230.60, and (3) for general relief. An interlocutory decree sustained the plaintiff's demurrer to the counterclaim "with leave to amend denied." The lessors took no appeal from that decree.

Other facts are referred to later in the opinion.

1. The issue presented by the bill for declaratory relief is whether there is in the lease an implied covenant to continue operations.[2] The counterclaim presents the issue whether the lessee may open competing stores and then discontinue operations. We consider first the issue under the bill.

The controlling principles are well established. An omission to specify an agreement in a written lease is evidence that there was no such understanding. *Snider* v. *Deban,* 249 Mass. 59, 65. Covenants will not be extended by implication unless the implication is clear and undoubted. *Smiley* v. *McLauthlin,* 138 Mass. 363, 364–365. *Mutual Paper Co.* v. *Hoague-Sprague Corp.* 297 Mass. 294, 301. Justice, common sense and the probable intention of the parties are guides to construction of a written instrument. *Clark* v. *State St. Trust Co.* 270 Mass. 140, 153. "Since the governing principle . . . is the justifiable assumption by one party of a certain intention on the part of the other, the undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Williston, Contracts (Rev. ed.) § 1293, p. 3682. *Russo* v. *Enterprise Realty Co. Inc., ante,* 655, 660, and cases cited.

The plaintiff contends that notwithstanding the interest of the lessors in having the premises operated so as to give

---

[2] The cessation of operations was threatened several years before the end of the lease. Hence, we need not consider whether an implied covenant to continue operations would be enforceable shortly before the end of the term. See *Selber Bros. Inc.* v. *Newstadt's Shoe Stores,* 203 La. 316, 324. Compare *Orkin's Fashion Stores, Inc.* v. *S. H. Kress & Co.* 68 N. Y. S. 2d 766, 767 (N. Y. Supr. Ct.).

them the benefit of possible percentage rent, the absence of an express requirement to operate together with a more than nominal minimum rent excludes the implication of a covenant to continue operations.

This may state too broad a rule. For even if there is a more than nominal minimum rent, other circumstances such as that the fixed rent is significantly below the fair rental value of the property might justify the conclusion that the parties intended that the lessors have the benefit of the percentage rent throughout the term.

The record does not show the fair rental value of the demised premises. An apparently substantial minimum rent in an apparently complete written lease, in the absence of a showing of disparity between the fixed rent and the fair rental value, gives ground for the inference that fixed rent and the lessee's self-interest in producing sales were the only assurance of rent that the lessors required. *Cousins Inv. Co.* v. *Hastings Clothing Co.* 45 Cal. App. 2d 141. *Monte Corp.* v. *Stephens,* 324 P. 2d 538 (Okla.). *Palm* v. *Mortgage Inv. Co. of El Paso,* 229 S. W. 2d 869 (Tex. Civ. App.). See, generally, Am. Law of Property, §§ 3.41, nn. 9–11, 3.66, nn. 9–10; Note, 44 Cornell L. Q. 251. Cf. *Masciotra* v. *Harlow,* 105 Cal. App. 2d 376. But see *Selber Bros. Inc.* v. *Newstadt's Shoe Stores,* 203 La. 316; Note, 61 Harv. L. Rev. 317, 325–326. Other circumstances may give rise to the same inference. See e.g. *Bynum* v. *Jos. E. Seagram & Sons, Inc.* 89 F. Supp. 780, 783–785 (E. D. Ark.), affd. on this ground sub nom. *Joseph E. Seagram & Sons, Inc.* v. *Bynum,* 191 F. 2d 5, 18–20 (8th Cir.). In cases where the minimum rent was not substantial continued operation has been held contemplated. *Lippman* v. *Sears, Roebuck & Co.* 44 Cal. 2d 136. *Professional Bldg. of Eureka, Inc.* v. *Anita Frocks, Inc.* 178 Cal. App. 2d 276. *Fox* v. *Fox Valley Trotting Club,* 8 Ill. 2d 571. See *Sinclair Ref. Co.* v. *Davis,* 47 Ga. App. 601; *Sinclair Ref. Co.* v. *Giddens,* 54 Ga. App. 69; *Stoddard* v. *Illinois Improvement & Ballast Co.* 275 Ill. 199; *Prins* v. *van der Vlugt,* 215 Ore. 682. See also *Percoff* v. *Solomon,* 259 Ala. 482.

In *Smiley* v. *McLauthlin,* 138 Mass. 363, this court held that where rent under a lease of a brick yard was to be computed on the basis of bricks made with no provision for minimum rent, there was no implied covenant that the lessee would operate the yard. The opinion stressed the extrinsic circumstances attending the making of the lease. ''The premises leased were not a brick yard in operation, equipped for work, but barren, unoccupied land. The parties did not know the amount of clay on the land, nor whether brick could be made on the land at a profit . . .. The lease, applied to the subject matter, furnishes indications that the parties regarded the enterprise as experimental, and that any stipulation binding the lessee to work the yard was purposely omitted.'' *Id.* at 365. The questions may be asked whether the parties did not intend a contract, and if so whether an implied covenant at least to try to operate the brick yard was the only consideration given by the lessee. Compare *Wood* v. *Lucy, Lady Duff-Gordon,* 222 N. Y. 88. As to output and requirement contracts see *Neofotistos* v. *Harvard Brewing Co.* 341 Mass. 684, 686–687.

The minimum rent in this lease appears to be substantial. The figure of $22,000 is obviously not nominal in a lease that fixes as a base real estate tax figure the 1946 tax of $3,744.90. The total of real estate taxes for 1954 was $5,127.71. This roughly indicates the valuation for tax purposes of the demised premises at about the time the lease was made.

The burden of showing a disparity between fixed rent and fair rental value such as to furnish ground for implying a covenant to operate would be on the lessors.

Had the lessors brought an action for damages for breach of an implied covenant to continue operations they would, of course, have had the burden of showing the covenant. That the lessee initiated the proceeding for declaratory relief does not shift that burden to the lessee. *Travelers Ins. Co.* v. *Greenough,* 88 N. H. 391. *Preferred Acc. Ins. Co.* v. *Grasso,* 186 F. 2d 987 (2d Cir.). Annotation, 23 A. L. R. 2d 1243. Borchard, Declaratory Judgments (2d ed.) 404–409.

We reject the view urged by some commentators that, having selected the forum and time of suit, the plaintiff in declaratory proceedings should have the burden of going forward and of persuasion. Anderson, Actions for Declaratory Judgments (2d ed.) § 375. Moore's Federal Practice (2d ed.) Rule 57.31 [2]. 62 Harv. L. Rev. 787, 836–838.

*Kaplan* v. *Boston,* 330 Mass. 381, and *Pierce* v. *Wellesley,* 336 Mass. 517, are consistent with our holding. In those cases the petitioners seeking declarations under G. L. c. 240, § 14A, that zoning regulations were unconstitutional had the burden because of the presumption of constitutionality. See, for a case showing resolution of the issue of the burden of proof by the substantive nature of the case, *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555–556.

In view of the stipulation of most of the facts the cases in other jurisdictions holding that the plaintiff by going forward may be held to have assumed the burden of proof would be inapplicable even if such a rule were to be adopted in our practice. *Pacific Portland Cement Co.* v. *Food Mach. & Chem. Corp.* 178 F. 2d 541, 547 (9th Cir.). *Liberty Mut. Ins. Co.* v. *Sweeney,* 216 F. 2d 209, 211–212 (3d Cir.). *Hartford Acc. & Indem. Co.* v. *Lougee,* 89 N. H. 222.

There is in this record no basis for implying a covenant to continue to operate beyond that time when in the business judgment of the lessee operations at the demised location[3] should cease. The lessors have not shown that "a reasonable person in the position of the . . . [lessors] would be justified in understanding" (Williston, Contracts [Rev. ed.] § 1293) that such a covenant was intended and hence implied.

The percentage rent provision of course gave the lessors an interest in the lessee's operations of the demised premises as a retail store. We assume, without deciding, that such interest could be protected against certain acts of the lessee, as for example, discontinuance of operations for

[3] As to discontinuance in connection with opening another store adjacent, or nearly adjacent, to the demised premises, see point 2.

spite or to inflict harm. Such issues are outside this record for there is no intimation that the plaintiff has acted or proposes to act in respect of the leased premises otherwise than as its sound business judgment dictates in fairly promoting its retail business in Haverhill.

2. We turn to the interlocutory decree sustaining the demurrer to the counterclaim. Although the defendants did not appeal from the decree, it is reviewable on the appeal from the final decree as the latter was affected thereby. G. L. c. 214, § 27. The final decree did not in terms dismiss the counterclaim. We conclude, however, that the final decree was intended to dispose of the entire case and we deal with the case as though the dismissal of the counterclaim had been express. See *Faulkner* v. *Lowell Trust Co.* 285 Mass. 375, 377.

As a basis for reformation of the lease the counterclaim alleged an understanding for continued use of the premises as a supermarket. The allegations are of representations made during negotiations;[4] they do not support a conclusion that the written lease was an erroneous embodiment of an agreement in fact made. See Williston, Contracts (Rev. ed.) § 1525.

The allegations underlying the prayer that the sales of other stores be included in the computation of percentage rent are, that the "plaintiff has not in good faith operated the demised premises so as to obtain the greatest volume of sales at this location, but has opened wrongfully [two] other stores at nearby locations, selling the same merchandise at lower prices." The effect of the two newly opened stores was, it is alleged, to diminish sales.

We assume that the prayer, although cast in terms of a specific form of relief for the alleged wrong, may be taken

---

[4] "Prior to the execution of said lease the premises therein demised had been leased and occupied as a so-called 'Super Market.' The plaintiff persuaded the defendants to lease the said premises to plaintiff, representing to the defendants at that time that it would continue to use the premises as a 'Super Market' throughout the term thereof; that the volume of business would be so great that defendants would receive annually a percentage of gross sales as set forth in the lease. . . . These defendants entered into the lease (Exhibit A) with this understanding, but the lease as written does not fully and accurately express the understanding of the parties."

as asking damages for the wrongful invasion of the lessors' rights. But the counterclaim does not state a basis for the recovery of damages of any kind.

The allegation "not in good faith" adds nothing to the facts stated. In context, it says no more than that the plaintiff has acted in violation of implied obligations of the lease. The lessors do not contend otherwise.[5]

The lessee, being free to disregard the effect on the lessors of its business decisions in respect of stopping operations, was free also to open stores elsewhere. We assume, without deciding, that had the lessee opened a competing store in the same location as the demised premises, that is adjacent, or nearly so, there might have been a basis for requiring it to regard the lessors' interest under the percentage rent provision in its conduct of the two stores. In such a case the lessee's acts would affirm the business advantage of remaining at the very place at which it had committed itself as tenant of the lessors. See *Seggebruch* v. *Stosor,* 309 Ill. App. 385; *Cissna Loan Co.* v. *Baron,* 149 Wash. 386. Compare *William Berland Realty Co.* v. *Hahne & Co.* 26 N. J. Super. 477 (fair allocation), affd. on this ground, 29 N. J. Super. 316; *Stockton Dry Goods Co.* v. *Girsh,* 36 Cal. 2d 677 (circumstances negatived implied covenant); *Masciotra* v. *Harlow,* 105 Cal. App. 2d 376. But, on the allegations, this is plainly not such a case. At most we may infer that there is some overlap of the potential customer area of the two new stores with the demised premises.

The lessors do not contend that the counterclaim is to be read to allege that the lessee acted for other than sound business reasons or for the purpose of depreciating the worth of the demised premises rather than for the affirmative advantage of doing business elsewhere. In the cir-

---

[5] Thus, in their brief, the lessors say, "Defendants contend that a lessee who enters into a percentage lease impliedly promises to use all reasonable effort to produce profits for the mutual benefit of lessor and lessee and that for lessee to open a competitive store nearby which diverts business from the leased premises, thus reducing the percentage rental, is a gross breach of good faith and a violation of a duty owed to the lessor."

cumstances we do not construe the allegation of sales of merchandise at lower prices as averring such a purpose. The counterclaim does not recite a policy of the lessee of setting unfair prices designed to draw customers from the demised premises or of unfair competition with the business in the demised premises. We intend no suggestion of the rule to be applied in such a case.

The defendants have not suggested that they could show such unfair competition, or that, the implications they contend for not being found in the lease, there was error in ordering the demurrer sustained "with leave to amend denied."

3. The interlocutory decree sustaining the demurrer and the final decree (construed as including a dismissal of the counterclaim) are affirmed.

*So ordered.*