**In re WILLIS FURNITURE COMPANY, INC., Debtor.**

**Bankruptcy No. 92–20664–WCH.**

United States Bankruptcy Court,
D. Massachusetts, E.D.

Dec. 22, 1992.

Andrew Corwin, Eskenas, Schlossberg & Kaplan, P.C., Brockton, MA, for debtor.

Leonard Krulewich, Boston, MA, for Creditors' Committee.

Jeffrey Dukess, Wheatley, Frenette & Dukess, Brockton, MA, for People's Sav. Bank.

Howard Gordon, Gordon & Associates, West Hartford, CT, for Zimmer Liquidations, Inc.

Kathleen R. Downing, U.S. Dept. of Justice, Boston, MA, for U.S. Trustee.

### BENCH DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter is before the Court on a "Joint Emergency Motion to Modify Court's Order of November 16, 1992 in Light of Decision of United States Court of Appeals" ("Motion V") and the Court's notice that it would consider the imposition of sanctions against debtor and its counsel under FRBP 9011 in connection with the filing of that motion.

The two matters under consideration can be better understood by a recitation of the short but hectic history of this proceeding.

Willis Furniture Company, Inc. ("Debtor") filed its original petition under Chapter 11 on October 20, 1992.

On the same day it filed its "Emergency Motion for Order Authorizing Debtor's Cash Raising Sale and Authorizing the Debtor to Obtain Post–Petition Financing" ("Motion I") An emergency hearing was granted and held on October 28, 1992.

The motion sought authority to conduct a "cash raising sale" under a contract with Zimmer Liquidations, Inc. ("ZLI"). The "Bankruptcy Sale Agent Agreement" (the "Agreement") was not attached to the motion or presented in court, but the motion stated that "a true and correct copy is available upon request at Debtor's counsel's office." The motion summarized the provisions of the Agreement as follows:

1. ZLI shall exclusively conduct the sale and receive a commission of 8% of gross sales.

2. ZLI shall advance to Debtor the value of Debtor's currently owned inventory, estimated at $380,000.

3. The advances shall be secured by a super-priority security interest in all inventory of the Debtor "to the extent that such advance pay those entities have a security interest in the inventory."

4. The advances will be repaid only from the proceeds of the sale.

5. Costs of the sale shall be paid from the advance (presumably by Debtor who received the advance), subject to reimbursement from the proceeds of the sale.

6. ZLI will make its credit lines available to Debtor.

7. ZLI and Debtor will share the profit of the sale on a 50/50 basis.

At the hearing, Debtor indicated that ZLI would be bringing substantial new merchandise onto Debtor's floor for sale.

The motion was denied based upon findings of fact and conclusions of law which appear on the record and in the discussion which follows.

Two days later, on October 30, 1992, Debtor moved for reconsideration on various grounds ("Motion II"). The motion was denied on November 3, 1992. The Court found that the motion did no more than reargue the issues raised under the original motion, an inadequate reason to grant reconsideration, *In re Wedgestone Financial*, 142 B.R. 7, 8 (Bankr.D.Mass. 1992). Further, Debtor had made no attempt to satisfy the requirements of 11 U.S.C. § 364(d)(1) in its attempt to grant ZLI a super-priority lien.

Three days passed. On November 6, 1992, Debtor filed its "Amended Emergency Motion for Order Authorizing Debtor's Cash Raising Sale," etc. ("Motion III"). As part of the consideration of that motion, the Court requested and obtained a copy of the Agreement, which was determined to contain the following provisions in addition to those previously listed:

7. The sale would be "a 'bankruptcy sale' or other such similarly designed event."

8. ZLI "shall be permitted to use the names, phrases, and concepts on all advertising and at all Sale Locations including, but not limited to, 'Bankruptcy Sale', 'Chapter 11 Bankruptcy Sale', 'Final Sale Days', and 'Going out of Business,'" the last only if the proceedings were converted to Chapter 7.

9. If the loan is not repaid, ZLI may proceed against its inventory without the necessity for an order of this Court.

In Motion III, Debtor alleged that no provision of Massachusetts law affected the sale as requested, but asked that, in any event, the Court exercise its equitable powers under 11 U.S.C. § 105(a) "to prevent state or local interference with this type of sale."

On November 16, 1992, the Court granted Motion III, subject to the following conditions:

A. Neither Debtor nor ZLI shall use the names, phrases or concepts "Bankruptcy Sale," "Chapter 11 Bankruptcy Sale", "Final Sale Days", "Going out of Business Sale," or any word or phrase of similar import if any merchandise being sold is not part of Debtor's present inventory.

B. Debtor and ZLI shall comply with all state and federal laws and regulations applicable to persons doing business in the Commonwealth of Massachusetts.

C. Conduct of the sale by Debtor shall not violate any provision of Debtor's lease for the premises where the sale shall be held.

D. Paragraph 1c(3)(v) of the Agreement—the "drop dead clause"—shall be effective only upon the filing of a motion for relief from stay under 11 U.S.C. § 362 and applicable local rules and the entry of an appropriate court order.

On November 19, 1992, Debtor filed "Emergency Motion to Modify Court's Order of November 16, 1992" ("Motion IV"). The essence of the motion was that ZLI would not enter into the transaction if it could not advertise the event as a "Bankruptcy Sale." An emergency hearing was sought.

On that same day the Court, treating Motion IV as a motion for reconsideration, denied it on the basis of *In re Wedgestone Financial, supra*.

Debtor's notice of appeal was filed on November 25, 1992, and the record transmitted to the District Court on that same day.

The docket in this case does not indicate the further travel of the matter from the District Court to the Court of Appeals, but it would appear that the District Court sustained this Court. In any event, on December 10, 1992, the Court of Appeals affirmed the judgment of the District Court. *In re Willis Furniture Company, Inc.*, 980 F.2d 721. The Circuit Court's *per curiam* opinion as relevant here reads as follows:

"Debtor contends that the bankruptcy court order authorizing debtor's cash raising sale, but forbidding the sale to be advertised as a 'Bankruptcy Sale,' 'Chapter 11 Bankruptcy Sale,' or words of similar import if merchandise being sold is not part of debtor's present inventory precludes truthful advertising and thereby violates debtor's First Amendment rights. We disagree.

"The arrangement debtor described with ZLI permits debtor to serve in large measure as a conduit through which ZLI may sell new inventory, financed by ZLI, utilizing debtor's premises and goodwill. *To refer to such a sale as debtor's chapter 11 bankruptcy sale, when inventory is furnished on a consignment basis by a solvent company not under the pressure of chapter 11 to raise funds, is misleading.* Misleading or deceptive advertising is not protected by the First Amendment. *Friedman v. Rogers*, 440 U.S. 1, 13–16, 99 S.Ct. 887, 895–97, 59 L.Ed.2d 100 (1979).

".... Nothing in this opinion, however, precludes debtor from seeking to modify the November 16, 1992 order and explaining to the bankruptcy court how debtor could frame an accurate advertisement containing the words 'bankruptcy sale' or 'chapter 11 bankruptcy sale' which also discloses the relevant aspects of debtor's arrangement with ZLI." (emphasis added).

Accepting the invitation suggested by the Court of Appeals, Motion V was presented.

Debtor seeks approval of certain specific advertising devices in connection with the sale to be conducted by ZLI. Copies are appended to this decision as Exhibits A (the newspaper advertisement), B (the front of the two merchandise tags), and C (the reverse of the two tags).

Exhibit A is an advertisement approximately the size of standard typing paper. It is captioned "MULTI–MILLION DOLLAR COURT AUTHORIZED SALE" in what I will call medium size type—the letters are about 9/16″ in height. In much larger type—1-7/16″ high, bannered across half of the page immediately following the caption is "CHAPTER 11 BANKRUPTCY SALE!", including the exclamation point. At the bottom of the copy, after some graphics and Debtor's logo and address, taking about 7/8″ in height by the entire width of the ad, we find "IMPORTANT NOTICE! PLEASE READ!" in a device resembling the dentated wafer sometimes used by notaries under their seals. This is followed by the following text, in upper and lower case letters, capitals being about 3/16″ in height:

"Inventory is being supplemented by a Professional Sales Consultant on a consignment basis to help Willis Furniture in its efforts to Reorganize under the Bankruptcy Laws & to afford you a better selection. All merchandise is of equal or better quality than Willis' normal stock."

Exhibits B and C and the front and back sides of tags designed to be placed on merchandise. The fronts are identical. Both are bannered at the top, "BANKRUPTCY CHAPTER 11 SALE," followed by "ASKING PRICE" in smaller type. At the bottom of the front we find "Please Turn Over/PRICE & INVENTORY INFO/ Please Turn Over."

There are two types of tags. On the reverse of one it says "ORIGINAL [BLANK] INVENTORY/CURRENT ASKING PRICE", followed by the following explanation:

"This merchandise is [blank] inventory which was present before the Bankruptcy Sale started. The price with the red X through it is the CURRENT ASKING PRICE. The CURRENT ASKING PRICE is NOT intended to reflect a pre-

viously offered price, a manufacturers suggested retail price, a 'compare at' price, or any other price other than the CURRENT ASKING PRICE. No representation of any savings or discounts, and any representation not in writing should be disregarded."

It is reasonable to conclude that the blanks would be completed with Debtor's name.

The second tag, while sharing the identical front with that just described, has a different back side. The caption is "SPECIAL PURCHASE GOODS/CURRENT ASKING PRICE." The explanation begins "This additional merchandise has been brought in for this sale by [blank] Inc. to afford you a greater selection of merchandise. The price with the red X …" The remainder of the language is the same, and it is reasonable to assume that the blank would be completed with the name of ZLI or an affiliate.

The "Current Asking Price"—a dollar amount crossed out on the front of the tag, is meaningless. It is just something labeled "Current Asking Price" whose primary purpose can only be to confuse or mislead the purchasing public. A secondary purpose may be to avoid the record keeping requirement as to advertising claims contained in the Attorney General's Regulations, 940 C.M.R. § 6.14. The disclaimer makes this intent clear.

### As to the motion itself

■ The opinion of the Court of Appeals is quite clear. The emphasized language in the quotation above is specific that to refer to a sale as "Debtor's Chapter 11 Sale" when inventory is furnished on a consignment basis by a solvent company not under the pressures of Chapter 11 to raise funds is misleading. Turning from that express language to the advertisement sought to be approved, we find that the latter uses about half its space to say "Chapter 11 Bankruptcy Sale." Can this be saved by the one inch "Please Read" disclaimer at

the bottom? The Court finds that no one acting in good faith could contend that it does.

This advertisement is as misleading as was the original advertising which this Court, and the Court of Appeals, refused to permit.

When one adds the large print "Bankruptcy Chapter 11 Sale" on the front of the Exhibit B tags—which is the only portion of the tags which the normal consumer will see, you have reinforced the misleading nature of the advertisement.

Adding in the "Current Asking Price" disclaimer from Exhibit C, the totality amounts to something very close to fraud on the public.

■ This type of sale may not be prohibited by Massachusetts law. M.G.L.A. c. 93 § 28A has very restrictive definitions of "removal sale" and "termination sale" which may not cover the contemplated sale as structured. But this Court is, as it has been reminded by Debtor, a court of equity, and in doing equity it is not prepared to send forth into the buying public an advertisement for a "Chapter 11 Bankruptcy Sale" when in fact the sale is nothing but a device for ZLI to sell its own merchandise using that caption. And this is obvious from that fact that ZLI, as stated in one of the earlier motions, will not go forward unless the transaction is called a bankruptcy sale.

### As to sanctions

■ Not only will the Court deny the motion, but it finds that, in presenting it, counsel for Debtor acted in bad faith. There is nothing in the present motion consistent with the opinion of the Court of Appeals. The motion as filed was not well grounded in fact; not warranted by existing law; and is not a good faith argument for the extension, modification, or reversal of existing law. It is a fourth or fifth generation motion for reconsideration of a prior order which flies in the face of the precise wording of the Court of Appeals decision.

The Court finds that the filing of the motion violated F.R.B.P. 9011 and assesses sanctions against counsel for Debtor in the amount of $5,000. There will be no sanctions against the debtor since that would be an exercise in futility.

An appropriate order will enter.

EXHIBIT A

EXHIBIT B

**BANKRUPTCY CHAPTER 11**

**SALE**

ASKING PRICE

**PRICE & INVENTORY INFO**

PLEASE TURN OVER

PLEASE TURN OVER

**BANKRUPTCY CHAPTER 11**

**SALE**

ASKING PRICE

**PRICE & INVENTORY INFO**

PLEASE TURN OVER

PLEASE TURN OVER

EXHIBIT C

**SPECIAL PURCHASE GOODS**
**CURRENT ASKING PRICE**

This additional merchandise has been brought in for this sale by _____ Inc. to afford you a greater selection of merchandise. The price with the red X through it is the CURRENT ASKING PRICE and it is NOT intended to reflect a price at which the merchandise was previously sold, a manufacturers 'suggested retail price, a "compare at" price, or any price other than the CURRENT ASKING PRICE. No representation of any savings or discounts, and any representation not in writing should be disregarded.

**ORIGINAL _____ INVENTORY**
**CURRENT ASKING PRICE**

This merchandise is _____ inventory which was present before the Bankruptcy Sale started. The price with the red X through it is the CURRENT ASKING PRICE. The CURRENT ASKING PRICE is NOT intended to reflect a previously offered price, a manufacturers suggested retail price, a "compare at" price, or any price other than the CURRENT ASKING PRICE. No representation of any savings or discounts, and any representation not in writing should be disregarded.