Quinlan, J.
The plaintiff, Electronic Data Systems Corporation (“EDS") has brought an action, pursuant to G.L.c. 30A, § 14(7) (c), to vacate the citation issued by the defendant Attorney General’s Fair Labor and Business Practices Division (the “Attorney General”), which was subsequently affirmed by the Division of Administrative Law Appeals (“DALA”). In his decision, the Chief Magistrate of DALA agreed with the Attorney General that EDS’s vacation policy was in violation of the Massachusetts Payment of Wages law, G.L.c. 149, §148.
This matter is presently before the court on EDS’s motion for judgment on the pleadings of its 30A appeal. For the following reasons, the decision rendered by the Division of Administrative Law Appeals is affirmed insofar as it found that Hutchins was entitled to vacation pay but is vacated insofar as this court finds that his award should have been pro-rated according to the time Hutchins worked in the period following his latest anniversary date with EDS.
BACKGROUND
This action arose when former EDS employee Robert Hutchins (“Hutchins”) filed a complaint for vacation pay with the Attorney General’s office. In his complaint, Hutchins asserted that EDS failed to pay him for earned but unused vacation upon his termination from the company.
EDS is a technology company that operates in a number of states, as well as internationally. Hutchins began his employment at EDS on October 15, 1986 and his employment terminated on May 4, 1999. At the point of his termination from EDS, Hutchins was an Infrastructure Analyst in the OTS Boston Software Support Organization and he drew a weekly salary of $1,275.
EDS maintained a written vacation policy whereby employees were offered paid vacation leave. Pursuant to this policy, employees were able to take vacation leave eveiy year of employment after their initial six months with the company. Vacation time available to each employee was a function of that employee’s time at EDS, and increased with the employee’s tenure. An employee who worked from one to four years received two weeks “per calendar year,” one who worked at EDS from five to nine years received three weeks “per calendar year,” and an employee who worked for ten or more years received four weeks of vacation “per calendar year.” Thus, at the time of his termination, Hutchins was entitled to four weeks of vacation time since he had, by then, been employed at EDS for more than ten years.
Within the EDS vacation policy, there are answers to questions that pertain to vacation time and attempt to clarify some potential employee concerns. The first question asks, “What happens if I don’t use my vacation during the year? Can I roll it forward?” The answer is, in relevant part, “For salaried employees, any unused vacation expires on December 31 and may not be carried forward to the next calendar year.” The next question asks, “What if I leave EDS? Can I get paid for any unused vacation?" The answer to this question states, “Vacation time at EDS is not earned and does not accrue. If you leave the company, you do not receive vacation pay for unused vacation time.”
After Hutchins’s May 4, 1999 termination from EDS, he filed a complaint with the Attorney General’s Fair Labor and Business Practices Division on July 26, 1999. On the Non-Payment of Wage Complaint Form submitted by Hutchins, he claimed that he was entitled to four weeks of vacation pay, or $5,100. In response, EDS submitted a written position as to why it believed no payment was due to Hutchins.
On January 5, 2000, the Attorney General issued a citation against EDS for the four weeks of vacation pay allegedly due to Hutchins, as well as a civil penalty of $558, for a total amount of $5,658. On or about January 18, 2000, EDS appealed the citation issued by the Attorney General to DALA. The parties agreed that no hearing was necessary and that they could resolve the dispute through cross motions for summary decision. On July 12, 2000, the parties submitted a Joint Statement of Material Facts, and the respective briefs were filed shortly thereafter.
On December 18, 2000, Chief Administrative Magistrate Christopher F. Connolley (the “Magistrate”) issued a written opinion affirming the citation issued against EDS for the amount of $5,100, but vacating the part of the citation that assessed the civil penalty of $558.
*690 On January 16, 2001, EDS filed a complaint for Judicial Review pursuant to G.L.c. 30A, §14, in which it sought an order vacating the citation issued by the Attorney General. The Attorney General filed the administrative record with this court on March 13,2001.
DISCUSSION
A. General Laws c. 30A, §14
Pursuant to G.L.c. 30A, §14(7), a court may modify an agency decision upon a determination that a party’s substantial rights have been prejudiced as a result of the decision being: “(a) [i]n violation of constitutional provisions; or (b) [i]n excess of the statutory authority or jurisdiction of the agency; or (c) [biased upon an error of law; or (d) [m]ade upon unlawful procedure; or (e) [unsupported by substantial evidence; or (f) [unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (6) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or (g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” G.L.c. 30A, §14(7) (2001 ed.). In its review, “[t]he court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred upon it.” Id.
In the present case, EDS contends that the doctrine of judicial deference is inapplicable because the Magistrate has committed an error of law. See Boston Police Superior Officers Federation v. Labor Relations Commission, 410 Mass. 890, 892 (1991). However, in the absence of a finding of an error of law, this court will defer to the Attorney General’s interpretation of a law it is charged with administering and enforcing. See Felix A. Marino Co., Inc. v. Commissioner of Labor and Industries, 426 Mass. 458, 460 n.2, 461 (1998). The Attorney General is the administering and enforcing agency for G.L.c. 149, § 148.[2] Therefore, so long as the Attorney General’s statutory interpretation is reasonable, this court will not supplement its own judgment. See Dowling v. Registrar of Motor Vehicles, 425 Mass. 523, 525 (1997), quoting Massachusetts Medical Society v. Commissioner of Insurance, 402 Mass. 44, 62 (1988).
B. General Laws c. 149, §148
The Commonwealth’s Payment of Wages Law, G.L.c. 149, §148, mandates that, upon their termination, employees are paid for their earned wages within six days of the pay period in which the wages are earned. This statute defines “wages” as “including] any holiday or vacation payments due an employee under an oral or written agreement.” G.L.c. 149, §148 (1996 ed. & 2001 Supp.).
EDS claims that, looking to the plain meaning of the statute, its vacation policy is consistent with G.L.c. 149, § 148. See Dartt v. Browning-Ferris Industries, Inc. (Mass.), 427 Mass. 1, 7 (1998), citing Massachusetts Bay Transp. Auth. v. Massachusetts Bay Transp. Auth. Retirement Bd., 397 Mass. 734, 738 (1986). Specifically, EDS asserts that the statute only mandates that departing employees be paid wages that are “due” pursuant to the terms of an agreement. Because the EDS vacation policy states that vacation is not earned and does not accrue, EDS maintains that the vacation it gives its employees is not “due” as required under the statute.
However, such an interpretation of vacation time would run contrary to Massachusetts v. Morash, 490 U.S. 107 (1989), whereby the Supreme Court found that vacation is part of an employee’s regular compensation. See id. at 120. Because an employee’s vacation time is regular compensation, it is earned just as wages are earned. Thus, to the extent that the EDS policy runs contrary to this premise, those terms are invalid.[3]
C.Pro-rating Vacation Pay'
As discussed in the Advisory on Vacation Policies published by the Office of the Attorney General, Fair Labor and Business Practices Division on September 7, 1999, a vacation policy that provides for a certain amount of vacation “a year,” “per year,” “on [the employee’s] anniversary date” is ambiguous. (See Administrative Record at 22.) This is so “because the definitions of the time periods are imprecise and subject to confusion concerning their start and end dates.” (See id.) The advisory opinion further states that “[w]here an employer’s policy is ambiguous, the actual time earned by the employee will be pro-rated according to the time period in which the employee actually works. For example, if an employee is to receive twelve vacation days ‘in a year,’ and the employee voluntarily or involuntarily terminates his or her employment after ten months of employment, the employee would be entitled to ten vacation days or one day per month worked. Discharge prior to one year without pro rata payment constitutes failure to pay wages earned under Section 148.” (See id. at 22-23.)
This interpretation accords with the apparent intent of the statute and the holdings that view vacation as wages. As such, this court finds that the vacation payment due to Hutchins should have been pro-rated according to the period of time he actually worked.
ORDER
For the foregoing reasons, it is hereby ORDERED that the decision of the Division of Administrative Law Appeals will stand insofar as it allows Hutchins to recover vacation monies due to him, but modified insofar as the payment should be pro-rated according to the length of time actually worked by Hutchins in the period subsequent to his last anniversary date.

“[T]he attorney general shall have exclusive authority to conduct field investigations, inspections and prosecutions with respect to, and otherwise to enforce, said chapters one hundred and forty-nine and one hundred and fifty-one all *691 regulations of the department [of labor and workforce development]!, and all other laws pertaining to wages, hours and working conditions, child labor and workforce safety and fair competition for bidders on public construction, except the laws pertaining to lead and asbestos hazards and workplace hygenic standards which the department [of labor and workforce development] shall enforce.” G.L.c. 23, §1 (1994 ed. & 2000 Supp.).

The EDS policy also appears internally inconsistent on its face. On the one hand, it states that the amount of vacation to which each employee is entitled increases as that employee’s tenure increases. This would tend to suggest that vacation time is “earned” and that as an employee stays with EDS for a longer period of time, that employee earns more vacation time. However, on the other hand, the policy also states that vacation time is not earned and does not accrue.
Minimally, this inconsistency would render the vacation portion of ihe contract ambiguous. “Contract language is ambiguous where ‘an agreement’s terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.’ ” Suffolk Const. Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999), quoting Fashion House, Inc. v. Kmart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).
“Where the terms of an instrument are ambiguous, a court must determine meaning from the intent of the parties upon consideration of the words in question, the entire instrument, and surrounding circumstances." City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999), citing Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45-46 (1991). “Justice, common sense and the probable intention of the parties are guides to construction of a written instrument.” Id., quoting Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964). “So far as reasonably practicable [a contract] should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.” Id., quoting Bray v. Hickman, 263 Mass. 409, 412 (1928).
Considering EDS’s vacation policy in its entirety, this court would find that the proper construction would be to view the vacation time as earned by employees as their tenure increases. Thus, a similar outcome would ensue under a pure contract analysis as the one which this court finds under the Morash analysis.