In re T.A.C. GROUP, INC., d/b/a Frugal Fannie's Fashion Warehouse, Debtor.

No. 03–13418–JNF.

United States Bankruptcy Court, D. Massachusetts.

June 12, 2003.

---

Steven Weiss, Shatz, Schwartz & Fentin, P.C., Springfield, MA, for debtor.

Lynne F. Riley, Riley & Esher, LLP, Cambridge, MA, for Official Committee of Unsecured Creditors.

Richard A. Sheils, Jr., Bowditch & Dewey, LLP, Worcester, MA, for Harvard Real Estate–Allston, Inc.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

## I. INTRODUCTION

The matter before the Court for consideration is the Motion of Harvard Real Estate–Allston, Inc. (the "Landlord") for Relief from the Automatic Stay (the "Lift Stay Motion"). T.A.C. Group, Inc. ("Frugal Fannie's" or the "Debtor") and the Official Committee of Unsecured Creditors (the "Creditors' Committee") have filed Oppositions to the Lift Stay Motion. The issue presented by the Lift Stay Motion is whether the Landlord's termination of the Lease by letter dated April 11, 2003 was effective so that the Debtor's interest in its Lease with the Landlord is not property of the estate, see 11 U.S.C. § 541(b)(2), and the automatic stay is unavailable to protect

the Debtor's interest in the Lease, see 11 U.S.C. § 362(b)(10).

The Court held a hearing on the Lift Stay Motion on June 10, 2003 at which time it heard the arguments of counsel, including their statements of undisputed facts. Upon consideration of the pleadings on file, the representations and arguments of counsel, the provisions of 11 U.S.C. §§ 541(a) and (b), 362(d)(1), and 362(b)(10), precedent in Massachusetts and in the First Circuit interpreting lease termination issues, and the entire record of proceedings in this Chapter 11 case, the Court finds that the facts necessary to decide the issue presented are not in dispute. Additionally, none of the parties represented at the June 10, 2003 hearing requested the opportunity for an evidentiary hearing. Accordingly, the Court now makes the following findings of fact and rulings of law in accordance with Fed. R. Bankr.P. 7052.

## II. FACTS

The Landlord attached three exhibits to its Lift Stay Motion, namely, the Lease, a letter from its counsel, dated April 11, 2003, purportedly terminating the Lease, and a letter from a representative of the Debtor to the Landlord dated April 14, 2003. The Debtor introduced one exhibit: an advertisement which appeared in *The Boston Globe* on Sunday, April 13, 2003.[1] In its color advertisement, the Debtor stated, in part, "Frugal Fannie's Fashion Warehouse Entire Store on SALE! ... NOW OPEN 7 DAYS A WEEK!" The Debtor did not indicate in the advertisement that its stores were closing, although the Debtor has admitted that it intended to close the stores at the conclusion of its sales. It

---

1. The Landlord's attorney did not object to the submission of this exhibit, and the attorneys for the Debtor and the Creditors' Committee did not object to the Court's consideration of the Landlord's exhibits.

filed its Chapter 11 petition on April 24, 2003.

The Debtor's Lease with the Landlord contains a number of provisions pertinent to resolution of the issue before the Court, including provisions governing going out of business sales. Article 8 of the Lease, entitled "Use and Operation," at Section 8.01, provides that the Debtor shall use the leased premises for the retail sale of women's and men's clothing and related items. Section 8.03 of the Lease provides that the Leased premises may not be used as for a going out of business sale. Article 42, entitled "Rules and Regulations," also provides at Subsection (o) that the premises shall not be used for a "going out of business sale." Article 26, entitled "Default Provisions,"provides at Section 26.01(iv) that the landlord may immediately terminate the Lease if ... "Tenant shall at any time during the continuance of this Lease remove, attempt to remove, or manifest, in the judgment of the Landlord, an intention to remove Tenant's goods or property out of or from the Demised Premises except in the ordinary course of business ...." Subsection (vi) of Section 26.01 is the only provision in the Lease giving the Landlord immediate termination rights without an opportunity and time to cure defaults. Finally, Article 40, entitled "Interpretation, Construction and Relationship of Parties," at Section 40.02(f), provides that "in any dispute over the meaning, interpretation, validity, or enforceability of this Lease or any of its terms or conditions, there shall be no presumption whatsoever against either party by virtue of that party having drafted this Lease or any portion thereof." Finally, Section 40.04, contains an integration clause, providing that the Lease is the entire agreement between the parties, and cannot be modified except in writing.

In early April 2003, the Debtor retained the services of a liquidating agent to conduct wind-down sales of all its inventory at its four different locations, as it intended to close all its stores and cease operating at the conclusion of the sales. A representative of the Debtor left a voice mail message for the Landlord informing it of the Debtor's plans. In response, on April 11, 2003, counsel to the Landlord sent the Debtor a letter purporting to be a notice of immediate termination of the Lease. The grounds for the immediate termination were the Debtor's announcement of its intention to conduct "going out of business sales" at all of its locations, including the leased premises, which in Landlord's view constituted an intention to remove its goods or property from the leased premises outside the ordinary course of business. Thereafter, representatives of both parties had a discussion concerning the orderly wind-down of the Debtor's business at the Brighton location which were confirmed in a letter dated April 14, 2003. These issues included the conduct of the liquidation sale, payment of per diem rent, waiver of a claim for damages for Lease termination, and termination of the Lease. As Exhibit C to the Lift Stay Motion indicates, however, the parties failed to reach an agreement on per diem rent or termination of the Lease.

Prior to and after filing its voluntary Chapter 11 petition on April 24, 2003, the Debtor, through its liquidating agent, conducted a sale at the Brighton location. The sale continued through the end of April of 2003. Thereafter, after the commencement of this Chapter 11 case, the Debtor tendered the keys for the leased premises to the Landlord.

The Debtor has not sought rejection of the Lease. Instead, it has filed a motion to assume and assign the Lease to a third party, which motion has been held in abeyance pending a determination of the instant dispute.

## III. DISCUSSION

A lease that has been terminated prior to the filing of a bankruptcy petition is not property of the estate, and the debtor's interest in a terminated lease is not protected by the automatic stay. *See* 11 U.S.C. §§ 362(b)(10), 541(b)(2); *In re 29 Newbury Street, Inc.,* 75 B.R. 650 (Bankr. D.Mass.1987), *aff'd, Saunders & Associates v. 29 Newbury Street, Inc. (In re 29 Newbury Street, Inc.),* 856 F.2d 424 (1st Cir.1988). Interpretation of the provisions of a lease is a question of law which depends on applicable state law. *Id.* at 654.

Under Massachusetts law, lease provisions must be read together and given a reasonable construction. *Markey v. Smith,* 301 Mass. 64, 70, 16 N.E.2d 20 (1938); *see also Bank v. Int'l Business Machines Corp.,* 145 F.3d 420, 429 (1998)("A contract should be interpreted as a whole, so that each of its provisions has operative effect."). Moreover, according to the court in *Stop & Shop, Inc. v. Ganem,* 347 Mass. 697, 701, 200 N.E.2d 248 (1964), "[a]n omission to specify an agreement in a written Lease is evidence that there was no such understanding," and "[c]ovenants will not be extended by implication unless the implication is clear and undoubted." (citations omitted). Thus, according to the court, "[j]ustice, common sense and the probable intention of the parties" should guide the construction of a written instrument, including a lease. *Id.* (citing *Clark v. State St. Trust Co.,* 270 Mass. 140, 153, 169 N.E. 897 (1930)). Similarly, in *Bank,* the United States Court of Appeals for the First Circuit stated that "'a contract should be construed so as to give it effect as a rational business instrument.'" 145 F.3d at 430 (citing *McMahon v. Monarch Life Ins. Co.,* 345 Mass. 261, 186 N.E.2d 827, 830 (1962)).

The Court finds that the purported termination of the Lease by the Landlord in its counsel's letter dated April 11, 2003 was not an effective prepetition termination of the Debtor's Lease. Interpreting all pertinent provisions of the Lease together, a reasonable construction of Sections 8.01, 8.02, 26.01, and 42, is that the wind-down sale conducted by the Debtor during April of 2003 was not a *removal* by the Debtor of goods or property out of the ordinary course of business so as to trigger the Landlord's right to immediately terminate the Lease.

"Going out of business sales" are the subject of several provisions in the Lease other than Section 26.01(vi), namely, Section 8.04 and Article 42. The Lease prohibits going out of business sales and contains specific provisions addressing such sales. A breach of the Lease by virtue of such a sale gave the Landlord the right to send a notice of default. Such a sale did not confer on the Landlord an immediate right to terminate the Lease.

The Court finds that Subsection 26.01(vi) of the Lease concerning the removal of the tenant's goods cannot be extended by implication to going out of business sales as the language of the Lease does not clearly manifest such an intention by the parties. *See Ganem,* 347 Mass. at 701, 200 N.E.2d 248. Thus, the Court finds that Subsection 26.01(vi) does not apply to wind-down or orderly going out of business sales. Rather, this provision applies to circumstances where the tenant removes all of its property in an extraordinary fashion, indicating an intent to immediately abandon the Leased premises and immediately terminate the Lease. The remedies available to the Landlord mirror the different circumstances surrounding going out of business sales and the removal of goods. In the case of a going out of business sale, which, in the typical case, occurs over a period of weeks, the Landlord has the right to issue a notice of

default. In the case of a tenant's removal of goods, which may occur unexpectedly, without notice to a landlord and signal emergent financial distress, the Landlord is given the right to immediately terminate the Lease. In short, the parties to the Lease appear to have contemplated two scenarios: the going out of business sale where inventory is sold at reduced prices to consumers, and the wholesale transfer by the Debtor of inventory out the "back door" to the back of a truck. The latter scenario is governed by Subsection 26.01(vi). Such an interpretation of the applicable sections of the Lease and the remedies available for going out of business sales and the removal of inventory accords with common sense and a rational business purpose. *See Bank*, 145 F.3d at 430.

In the present case, the Debtor's goods were not *removed* from the leased premises out of the ordinary course of business. Rather, they were sold on a retail basis at the leased premises for several weeks to consumers before and after the commencement of the Chapter 11 case in an orderly, albeit, wind-down, manner. The Debtor's actions cannot be reasonably construed as an abandonment of the leased premises due to its removal of inventory, which abandonment would come within Subsection 26.01(vi).

■ The Landlord's subjective belief of insecurity does not change the Court's interpretation. Although Subsection 26.01(vi) provides that if, in the judgment of the Landlord, the tenant removes, or manifests an intention to remove, its goods or property, the Landlord's conclusion that the Debtor was immediately terminating its Lease was not justified under the facts and circumstances of this case, especially in light of the communications between representatives of the parties. These communications reveal that termination was

the subject of negotiations. Accordingly, the Court rejects the Landlord's argument that the Lease was terminated prepetition and that the automatic stay does not apply to its right to re-let the Brighton premises.

■ Therefore, because the Landlord's letter of April 11, 2003 was ineffective to terminate the Lease, the Debtor's interest in the Lease was extant as of the petition date and the Lease is assumable and assignable under 11 U.S.C. § 365, notwithstanding the Debtor's engagement of an agent to conduct a going out of business sale. *See In re Willis Furniture Co., Inc.*, 148 B.R. 691 (Bankr.D.Mass.1992).

■ Alternatively, the Landlord seeks relief from stay to re-let the Premises. The Landlord has not demonstrated cause for relief from stay under 11 U.S.C. § 362(d)(1), especially where the Debtor has filed a motion to assume and assign the Lease to a third party purchaser for substantial consideration to be paid to the estate.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order sustaining the Oppositions filed by Debtor and the Creditors' Committee and denying the Motion of Harvard Real Estate–Allston, Inc. For Relief from Automatic Stay.

### ORDER

Upon consideration of the Memorandum dated June 12, 2003, the Court hereby sustains the Oppositions filed by T.A.C. Group, Inc. and Official Committee of Unsecured Creditors and denies the Motion of Harvard Real Estate–Allston, Inc. for Relief from the Automatic Stay.